# O'Donnell *v.* Rodiger.

### *Contested Probate of Will.*

1. *Construction of charges.*—Charges which are reconcilable with, and explanatory of each other, must be construed in connection; and if, when so construed, they are correct, though erroneous as universal propositions, they are not cause for a reversal of the judgment.

2. *Charges objectionable for generality, or obscurity, or misleading without explanation.*—A charge which asserts a correct legal proposition, but is objectionable on account of its generality or obscurity, or because it is calculated to mislead the jury, is not cause of reversal; the adverse party should protect himself by asking a qualifying or explanatory charge.

3. *Right of married woman to make will; charge as to.*—A married woman has the right, under constitutional and statutory provisions (Const. Ala., Art. x, § 6; Code, § 2713), to dispose of her separate property by will, without the consent of her husband; and when the will of

[O'Donnell v. Rodiger.]

a married woman is contested by her surviving husband, for whom it made no provision, on the ground of mental incapacity, a charge asserting that "the deceased had the lawful right to make her will, and thereby dispose of her property as she wished, without the consent of her husband, and without leaving him anything," construed in connection with other charges, which stated the law correctly as to mental capacity and the proof thereof, asserts a correct legal proposition, does not assume the mental capacity of the testatrix, and is not a charge on the effect of the evidence; and if objectionable for generality or obscurity, or calculated to mislead the jury, it is not cause of reversal.

4. *Presumption of sanity; burden of proof.*—Sanity being the normal condition of the human mind, the law presumes that every person, of full age, has sufficient mental capacity to make a will, and casts on the contestant, in the first instance, the *onus* of proving mental incapacity at the time the will was executed; but, when the contestant has established habitual and fixed insanity, at a time prior to the making of the will, the burden of proof is then shifted to the proponent, and he is required to show that the will was executed during a lucid interval.

5. *Same.*—Mental aberration, when caused by an acute disease, or other temporary cause, will not be presumed to have continued for any particular time; and proof of the fact that, on the day the will was executed, the testatrix "was sick and flighty—that during part of the time she knew what she was doing, and a part of the time she did not know what she was doing"—is not sufficient to cast on the proponent the *onus* of proving that she was sane at the particular time when the will was made.

6. *Testamentary capacity.*—The test of testamentary capacity is, not whether there was a total deprivation of reason, but whether there was mind and memory enough to understand the business in hand—"power to collect and retain the elements of the business to be performed, for a sufficient time to perceive their obvious relation to each other."

APPEAL from the Probate Court of Mobile.

Tried before the Hon. PRICE WILLIAMS, Jr.

In the matter of the probate of a paper which was propounded as the last will and testament of Mrs. Agnes O'Donnell, deceased, by Anna B. Rodiger, who was therein made sole legatee and devisee, nominated as executrix, and relieved of giving bond; and the probate of which was contested by Michael O'Donnell, the surviving husband of said decedent, on the ground of mental incapacity on her part to execute a will. The paper was dated the 11th April, 1884; was signed by the testatrix, by mark only, and was attested by two witnesses. On the trial of the contest, a bill of exceptions was reserved by the contestant, in which the facts are thus stated:

"The proponent offered testimony tending to show that said Agnes O'Donnell was of sound mind before the day on which said instrument was written, and from and including that day until her death; that she told the attorney writing it, on the day of the writing of the instrument, that she wanted to make a will, and what disposition she desired to make of her property, and he wrote it out in accordance with her instructions; that the will was then read over to her, and she signed it by

[O'Donnell v. Rodiger.]

making her mark thereto, and that at her request, in her presence, and in the presence of each other, said Cloud and Wackernah, whose names are signed to the instrument as witnesses, subscribed their names thereto as such witnesses; that she was not on good terms with her husband, who had often ill-treated her; that she had no other relations, and that she had often said, before her last illness, that she was going to give her property to the proponent. The contestant offered evidence tending to show that the proponent, to whom all the property was given in the instrument offered for probate, was of no kin to the said Agnes O'Donnell; that he was her husband, and was living with her at the time she was taken sick, but was away from home at work that day; that when he came home he could not find where his wife had gone; that he looked for her several days, and finally found her at the house of the proponent, who would not allow him to see his wife, or to go in the house; that he and his said wife lived together on friendly terms, and he was not abusive of her; that she always said that she intended to leave the property to him; that a large part of the property, though in the name of his wife, was the product of their joint labors; that on the day said instrument was made, and only two or three hours before it was made, the said Agnes was flighty, and out of her head, and did not know what she was doing; that she did not recognize any one, and thought that she had been going around the country, and spoke of people annoying her the night before who had in fact been dead for years; that she was in the same condition the evening of the day on which the instrument was written, and on the day following, and continued in that condition up to a few days before she died, and during these few days was speechless; that prior to the day of the making of the instrument, and during the entire time of her sickness, she was flighty, and a part of the time out of her head, and unable to know and recognize those around her, but at other times would seem to be rational enough."

"This was all the evidence tended to show;" and thereupon the court gave the following charge to the jury, at the request of the proponent: (1.) "That the deceased, Agnes O'Donnell, had the lawful right to make her will, and thereby dispose of her property in such manner and to such person as she wished, without the consent of her husband, and without leaving him any thing." (2.) "The burden of proving mental incapacity to make a will, or undue influence in the making of the will, is on the contestant, Michael O'Donnell; and unless he has satisfied the jury by the evidence that the deceased was so unsound in mind at the time she made the will as not to know what she was doing, or that undue influence was exercised over her to

such a degree as to amount to moral coercion, which she was unable to resist, and that such coercion -or influence produced the will, then they should find the issue against the contestant, and in favor of the proponent." (3.) " If the jury believe, from the evidence, that the deceased dictated to the witness Cloud how she wanted the will written, and the way she wished to will or dispose of her property, and requested him to write out her will for her, and to write her name to it ; and that he did so in her presence, and then read it over to her, and she then and there made her mark to it as her will, and requested said Cloud and Wackernah to witness it ; and that they then and there wrote their names to said will as witnesses, in the presence of the testatrix, and in the presence of .each other ; then said will was legally and properly signed and executed, within the meaning of the law of Alabama."

The contestant excepted to each of these charges as given, and also to the refusal of the following charge, which was asked by him in writing :  "If the jury believe, from the evidence, that on the day the will was signed Mrs. O'Donnell was sick and flighty ;  that during part of the time she knew what she was doing, and a part of the time she did not know what she was doing ;  then the burden is upon the proponent to establish to the satisfaction of the jury that she was sane at the particular time when the will was signed ;  and if the proponent fails in this, the jury should find against the validity of the will."

The charges given, and the refusal of the charge asked, are now assigned as error.

H. T. SMITH, and J. L. & G. L. SMITH, for appellant.—(1.) The first charge given was erroneous, because it assumed the sanity of Mrs. O'Donnell, which was a disputed question of fact, the decision of which should have been left to the jury.—*Clarke & Co. v. Goddard*, 39 Ala. 164 ; *Pritchett v. Munroe*, 22 Ala. 501 ; *Newton v. Jackson*, 23 Ala. 335 ; *Jones v. Fort*, 36 Ala. 449 ; *Waters v. Spencer*, 22 Ala. 460 ; *Brooks v. Hildreth & Mosely*, 22 Ala. 469 ; *Whitsett v. Slater*, 23 Ala. 626 ; *McKenzie v. Br. Bank*, 28 Ala. 606 ; *Knight v. Vardeman*, 25 Ala. 262 ; *Brown v. Newman*, 66 Ala. 275.  It is erroneous, also, because it is a charge on the effect of the evidence.—*Stanley v. Nelson*, 28 Ala. 514 ; *Hollingsworth v. Martin*, 23 Ala. 591 ; *Dill v. The State*, 25 Ala. 15 ; *Smoot v. Railroad Co.*, 67 Ala. 13 ; *Walker v. Walker*, 41 Ala. 353 ; *Foust v. Yielding*, 28 Ala. 658.  (2.) The second charge was erroneous, because it misplaced the burden of proof, and because it does not assert a correct test of testamentary capacity.—*Saxon v. Whitaker*, 30 Ala. 237.  (3.) The third charge was erroneous, because it assumes the credibility of the evidence.—Cases cited in Brickell's Di-

gest, 342, § 98. (4.) The charge asked asserts a correct legal proposition, and it ought to have been given. *Saxon v. Whitaker*, 30 Ala. 237.

L. H. FAITH, and CLOUD & CLOUD, *contra.*—(1.) The first charge given asserts a correct legal proposition.—*Burton v. Holly*, 18 Ala. 408 ; *Lewis v. Hudson*, 6 Ala. 463 ; *Wells v. Bransford*, 28 Ala. 200 ; *Mosser v. Mosser*, 32 Ala. 551. (2.) The will was properly signed and executed ; and the charge to this effect, which was based on the evidence before the jury, was correct.—*Bailey v. Bailey*, 35 Ala. 687. (3.) As to the burden of proof, where a will is contested on the ground of mental incapacity, and as to the test of testamentary capacity, the rulings of the court are sustained by the following authorities : *Stubbs v. Houston*, 33 Ala. 563 ; *Saxon v. Whitaker*, 30 Ala. 237 ; *Clark v. Ellis*, 9 Oregon, 128 ; *Harden v. Hays*, 9 Barr, 151 ; *Clark v. Sawyer*, 3 Sanf. Ch. 351 ; *Jackson v. Van Dusen*, 5 John. 159 ; *Stevens v. Vancleve*, 4 Wash. C. C. 262 ; 91 Penn. St. 236 ; 58 Maine, 453 ; 94 Ill. 560 ; *Black v. Ellis*, 3 Hill, S. C. 68 ; 27 N. Y. 9 ; 38 Barb. 77 ; 18 Ill. 282 ; 29 Penn. St. 298.

CLOPTON, J.—Charges which are reconcilable with, and explanatory of each other, must be construed in connection ; and if, when so construed, they are correct, although erroneous as universal propositions, a reversal of the judgment is not warranted.—*Insurance Co. v. Goodman*, 32 Ala. 108.

Construing the first charge given at the request of the proponent, in connection with the charges which present the question of the mental capacity of the testatrix, and interpreting it as we have no doubt the court intended it to be understood by the jury, we do not think it is obnoxious to the criticism made by counsel. The objective proposition of the charge, to which the minds of the court and jury were evidently directed, is the right of a married woman to make a will, *without the permission of her husband*, and *without any provision for him*. It does not assume, as a fact, the mental capacity of the testatrix, which the law presumes ; it is not a charge on the effect of evidence, nor does it give the jury any direction as to their verdict. If a charge were expressed in the words of the constitution—that " the real and personal property of any female in this State . . may be devised or bequeathed by her, the same as if she were a *femme sole* ;" or in the terms of the statute—that " married women may, by last will and testament, dispose of their separate estates," its correctness would not be controverted.—Con. Art. 10, § 6 ; Code, § 2713. The charge under consideration asserts the same general proposition, and not in

broader or more general phraseology. If the contestant supposed himself injured by the generality of the charge, or that it was calculated to mislead the jury, he should have requested a qualifying, or explanatory charge. A charge which asserts a correct legal proposition, but is objectionable on account of generality, or obscurity, or because it is calculated to mislead the jury, will not operate a reversal.—*Jones v. Fort*, 36 Ala. 449 ; *Abraham v. Nunn*, 42 Ala. 51.

The same observations are applicable to the third charge requested by proponent, which merely instructed the jury, that the will was *legally* and *properly signed* and *executed*, if they believed from the evidence the hypothetical facts stated in the charge. Construed in connection with the evidence, the charge is unobjectionable.—*Riley v Riley*, 36 Ala. 496.

Sanity is the normal condition of the human mind ; and therefore the presumption is, whether a presumption of law, or of fact, or of mixed law and fact, that every person, of full age, has sufficient mental capacity to make a will. This competency is presumed to continue, until the contrary is shown. When a will is propounded for probate, no general duty devolves on the proponent to make proof, in the first instance, of the sanity of the testator at the time of making the will. Whatever may be the conflict in the decisions of different courts, it may be regarded as too well settled in this State, to be controverted or doubted, that when a will is contested on the ground of mental incapacity, the *onus* of proof is on the contestant. The time to which the inquiry must be directed, is the particular period when the will is made ; but, for this purpose, the mental condition of the testator, before and subsequently, may be shown.

The contestant fulfills this requirement as to the *onus* of proof, when he establishes lunacy at a time prior to the making of the will. As the presumption is that lunacy, once established, continues, if it is alleged, in such case, that the will was made during a lucid interval, " the burden of proof attaches to the party alleging such lucid interval, who must show sanity and competency *at the particular period*."—*Saxon v. Whitaker*, 30 Ala. 237 ; *Jackson v. Dusen*, 2 John. 144 ; *Grubbs v. Mc-Donald*, 91 Penn. St. 236.

In order, however, to have effect to shift the burden of proof on the proponent, to show that the will was made during a lucid interval, the contestant must establish habitual and fixed insanity. Occasional fits, or aberrations of mind produced by temporary causes, are not sufficient. There is no presumption in favor of the continuance of any thing temporary, or ephemeral in its nature. The disease of the mind must be of such general and permanent character, as human experience shows generally continues. Where the insanity is produced by

[O'Donnell v. Rodiger.]

an attack of some acute or violent disease, it is not sufficient for the contestant merely to show its existence, under such circumstances, at a time, short or distant, preceding the making of the will. He must also show its continuance to the time when the will is made. —*Brown v. Riggin*, 94 Ill. 560 ; *Clarke v. Sawyer*, 3 San. Ch. 351 ; *Hix v. Whittemore*, 4 Met. 545.

In *Saxon v. Whitaker, supra*, it is said : "As a lucid interval is temporary in its nature, and uncertain in its duration, *the law* will not presume its continuance for a month, a day, or an hour ;" this is when usual or habitual insanity has been once established. The converse of the proposition is equally true : the continuance of a temporary delusion or delirium caused by disease will not be presumed " for a month, a day, or an hour." In *Staples v. Wellington*, 58 Me. 453, it is said : " If the delusion or delirium is that caused by disease, it is obviously temporary in its character. It will continue only during the continuance of the fever, in which it originated. If a fever is shown to exist at a given date, the law does not presume its continuance, as in the case of fixed insanity. So, there is no presumption of law as to the continuance of the temporary hallucination or delusion resulting from disease. The party claiming to avoid a contract, by reason of temporary hallucination or delusion, must show its existence at the time of the contract sought to be avoided for such cause, and that it was of a character affecting his capacity to make the contract sought to be avoided."

The second charge requested by the proponent put the *onus* of proof, in the first instance, on the contestant, and, in this respect, is in accord with the principles we have stated. The predicate of the charge requested by the contestant does not answer the rule. That on the day the will was signed, the testatrix " was sick and flighty ; that during part of the time she knew what she was doing, and part of the time she did not know what she was doing," is not sufficient to cast on proponent the burden to show that she was sane at the particular time when the will was made. The hypothesis stated is not a condition of fixed or habitual mental derangement or flightiness. The clear implication from the hypothetical facts is, that the flightiness or delirium was temporary, and subsided and ceased, as the operating cause subsided and ceased.

"A total deprivation of reason is not requisite to destroy testamentary capacity. *Dementia* and idiocy are not the only forms of incapacity. A competent testator must not only have mind and memory, but mind and memory enough to understand the business in which he is engaged." A disposing memory is requisite—not mere weakness of understanding, but " power to collect and retain the elements of the business

[Foster v. Burt.]

to be performed for a sufficient time to perceive their obvious relation to each other." The testatrix should have had capacity to know what she was doing.—*Stubbs v. Houston*, 33 Ala. 555; *Taylor v. Kelly*, 31 Ala. 59; *Converse v. Converse*, 21 Vt. 168. This is the test of testamentary capacity applicable to this and similar cases.

Affirmed.