# Kramer *v.* Weinert.

### *Contested Probate of Will.*

1. *Evidence on issue of mental incapacity and undue influence.*—When the probate of a will is contested on the grounds of mental incapacity and undue influence, the investigation is directed to the particular time at which the will was executed; but, for the purpose of elucidating these issues, evidence of facts preceding and subsequent to that particular time is competent and admissible.

2. *Charge as to testamentary capacity.*—A charge instructing the jury on the contested probate of a will, that if the testatrix, at the time of the execution of the will, "had a diseased brain, and from this cause, or from disease, her mind was so unsound as not to remember the names of her relations, and to judge soundly of the acts she was about to do, or to know and understand the business she had in view, and to think soundly on that business, then she did not have capacity to make a will," does not assert a correct rule as to testamentary capacity, and is calculated to confuse and mislead the jury.

APPEAL from the Probate Court of Mobile.

Tried before the Hon. PRICE WILLIAMS, JR.

This was a contest of the probate of a paper purporting to be the last will and testament of Mrs. Minna Frank, deceased, in which Kramer, the appellant, was appointed executor. Judgment was rendered for contestants, and Kramer appealed.

The questions presented for decision arose on exceptions by Kramer to the allowance of certain evidence, and the charges of the court.

The contestants asked one B., the lawyer who wrote the will of deceased, "Was the application to probate this will of Mrs. Frank drafted and filed on the same day as the funeral?" Witness answered that it was.

The charges were as follows :

1. "That if the jury believe, from the evidence, that the deceased, Minna Frank, had, at the time of making of the will, now offered for probate, a diseased brain, and, from this cause or disease, her mind was so unsound as not to remember the names of her relations and to judge soundly of her acts she was then about to do, or to know and understand the business she then had in view, and to think and act on that business soundly, then she did not have capacity to make a will, and they should find the issue against proponent, and in favor of the contestants."

2. "The court charges the jury, that if Mrs. Frank was a

woman of infirm mind, and that Mrs. Bolman and Kramer, or either of them, practiced upon the fears of Mrs. Frank, and through those fears induced her to make the will, then the will is void, and the jury should find for the contestants."

3. "The court charges the jury, that if Mrs. Minna Frank is shown by the evidence to have been insane before the making of the will, that the law presumes she was insane when the will was made, unless the evidence also shows that she regained her sanity before the will was made."

4. "The court charges the jury, that if Mrs. Minna Frank's mind was unsound, and that she did not understand what she was doing when she signed the will, then the will is void, and the jury should find for the contestants."

F. G. BROMBERG, and PILLANS, TORREY & HANAW, for appellant.

L. H. FAITH, McINTOSH & RICH, and LESLIE B. SHELDON, contra.

CLOPTON, J.—An instrument purporting to be the will of Minna Frank, having been propounded for probate, some of the heirs appeared to contest its validity, and issues were formed, which a jury was empanneled to try, involving inquiries as to the testamentary capacity of the testatrix, and the procurement of the will by undue influence. In such proceeding and on such issues, the particular time, to which the investigation should be directed, is the execution of the will; but for the purpose of elucidating the competency and freedom of will of the testatrix at that time, her mental condition, preceding and subsequent, and all circumstances relevant to the issues, may be proved.—*O'Donnell v. Rodiger*, 76 Ala. 222.

By request of the contestants, the court instructed the jury, that if the testatrix, at the time of the execution of the will, "had a diseased brain, and from this cause or disease, her mind was so unsound as not to remember the names of her relations, and to judge soundly of her acts she was then about to do, or to know and understand the business she then had in view, and to think and act on that business soundly, then she did not have capacity to make a will." The charge raises the question of the degree of mental capacity requisite to make a valid will. The term, "of sound mind," as used in our statutes, regulating the power to dispose of property by will, has the same meaning and expresses the same rule as to the test and degree of testa-

mentary capacity, as the usual and general expression, "of sound and disposing mind and memory." Neither the statutory, nor the common law term, is to be understood in the sense in which the literal signification of the words import —a mind unimpaired and unbroken, "having all the organs and faculties complete and in perfect action;" but in the legal sense, as understood and practically applied in adjudging the validity of wills. On the other hand, *dementia* or idiocy, or a total deprivation of reason from any cause, is not requisite to destroy testamentary capacity. But, it is not every impairment of the mind, which renders a person incompetent. Mere weakness of intellect is not sufficient to incapacitate. Delusion or partial insanity will not invalidate a will, which is not the offspring of such delusion or partial insanity. And a rule which would make a capacity to manage and transact business generally the standard of testamentary capacity was repudiated in *Stubbs v. Houston*, 33 Ala. 555. It is said : "There may be a competency to make a will, without such capacity as would enable a man to transact the ordinary business of life." Mind and memory may be impaired and enfeebled by age or disease, and yet the testator possess sufficient capacity to make a will, though it may stimulate a vigilant scrutiny. The impairment must extend to a deprivation of the rational faculties, the use and exercise of which are requisite to a proper and intelligent disposition of property. The rule, as established in this State, and sustained by the weight of authority, as the test of testamentary capacity in cases like the present, is, if the testatrix had mind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to make—to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other—she had, in contemplation of law, a sound mind. *Taylor v. Kelly*, 31 Ala. 59; *O'Donnell v. Rodiger, supra ; Stevens v. Vancleve*, 4 Wash. C. C. R. 262; *Sloan v. Maxwell*, 3 N. J. Eq. 563; *Lowder v. Lowder*, 58 Ind. 538 ; *White v. Farley*, Dec. Term, 1886–87.

The first of the alternative propositions of the charge under consideration asserts two standards of testamentary capacity, inability to remember the names of relations, and to judge soundly of the act about to be done. The hypothetical failure of memory is based, so far as appears from the evidence, upon a mistake in the will in giving the christian name of a sister of the testatrix, who was the mother of some of the objects of her bounty, though she substan-

[Kramer v. Weinert.]

tially recollected, and stated the names of the beneficiaries and their places of residence. The question is not the degree of memory, but its disposing power. A testator may not be able to recollect and recall the names of long and intimate acquaintances, and of near relatives, and yet be competent to understand and direct the dispositions of his property. Says Chancellor Kent : "The want of recollection of names is one of the earliest symptoms of a decay of the memory ; but this failure may exist to a very great degree, and yet the solid power of understanding remain." *Van Alst v. Hunter,* 5 Johns. Ch. 148 ; *Stevens v. Vancleve, supra ;* 1 Jar. on Wills, (Ran. & Tal. Ed.) 93, *note B.* Any other rule would incapacitate most persons of advanced age to dispose of their property by testament. The failure of memory, unless it be entire, or extend to the immediate family and property of the deceased testator, or so far that he is unable to recall and retain the constituents of the business sufficiently long for its completion, is not of itself a legal standard of testamentary capacity.

Instructions to juries, who are generally uninformed of the legal definitions of terms, should furnish, as far as practicable, simple, clear, and definite rules of law, easy of application, and without tending to confuse or mislead. The general phrase "of sound and disposing mind and memory," though technically correct when used in a charge, conveys to the minds of the average jury no distinct and definite understanding of the legal tests of testamentary competency. The term, "to judge soundly," is objectionable in an instruction. The expression, *a mind so unsound as not to judge soundly,* while recognizing degrees of unsoundness, does not assert a correct test of the degree requisite to destroy testamentary capacity. To judge is to compare facts or ideas so as to form an opinion ; and to judge soundly is to form a correct opinion, truly, justly, without error. From this clause of the charge, being in juxtaposition and linked to the other hypothetic fact of inability to remember the names of her relations, the jury may have understood, that if, considering the dispositions of the will in connection with the failure of memory, they were not conformable to what would, ordinarily, be deemed reasonable and just as between all her relations having equal claims, they were authorized to find, from these facts, that the testatrix was of unsound mind sufficient to render her incapable of making a will. A testator should have capacity to make a fair, just, and rational testament ; but the *capacity* being established, however indiscreet and unreasonable may be the dispositions of the will, however unjust to those to

whom he is bound by the ties of natural affection, and who are dependent upon his bounty, the will, if not the creature of delusion, nor procured by improper influence, must be established. The phrase, as used in the charge, has no understood and defined legal meaning, and is confusing and misleading. It does not express any maxim or rule of law, and does not serve to enlighten the jury. If the charge is not subject to these objections, then the investigation of the jury is directed in a circle, using a diseased brain to show inability to judge soundly, and such inability to establish the requisite degree of unsoundness. The same objection exists to the second alternative proposition ; which is, or not "to know and understand the business she had in view, and to think and act on that business soundly." If the testatrix had mind and memory sufficiently sound to know and understand the business in which she was engaged, she possessed testamentary capacity. This, says Justice Washington, is the most simple and intelligent form of the inquiry. The charge added another inquiry, which, in effect instructed the jury that a higher degree of mind and memory was requisite than is sufficient to know and understand the business : "to think and act on that business soundly." In this, there is error.—*Yoe v. McCord*, 74 Ill. 33 ; *Horne v. Horne*, 9 Ire. 99 ; *Dunham's Appeal*, 27 Conn. 192 ; 1 Red. on Wills, 125, 127.

There is no error in the other charges. They are based on principles well settled.—*O'Donnell v. Rodiger, supra ; Gilbert*, 22 Ala. 529 ; *Taylor v. Kelly, supra.*

Reversed and remanded.