# Knox *v.* Knox.

### Contested Probate of Will.

1.   *Testamentary papers probated together ; revocation by later will.*—A testamentary paper executed by the testatrix five or six years before her death, in execution of a testamentary power conferred on her by her deceased husband, is not revoked, as matter of law, by the execution and destruction of a later will, which is not shown to have revoked it ; nor by the execution of a third will, a few months before the death of the testatrix, containing substantially the same provisions, but not referring to it ; and the two instruments may be admitted to probate together, as constituting the entire last will and testament of the testatrix.

2.   *What is testamentary capacity.*—If the testatrix had mind and memory sufficient to recall and remember the property she was about to bequeath, the objects of her bounty, and the disposition which she wished to make—to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other—then, in legal contemplation, she had a sound mind and disposing memory.

3.   *What is undue influence.*—The undue influence which will avoid

[Knox v. Knox.]

a will, must amount to coercion or fraud, destroying the free agency of the testator, and constraining him to do what is against his will: mere persuasion or argument addressed to the judgment or the affections, in which there is no fraud or deceit, does not constitute undue influence.

4.  *Relevancy of evidence as to mental condition of testatrix.*—When the probate of a will is contested on the ground of mental incapacity or undue influence, the real issue is as to the condition of the mind, or the operation and effect of the undue influence, at the time the will was executed; but former facts and circumstances, relevant to this issue, are admissible as evidence for either party.

5.  *Will making unequal disposition of property.*—The law does not undertake to prescribe or regulate the duties of a testator in the disposition of his property, and the fact that he makes an unequal disposition of it among his next of kin does not impose upon the proponents, or beneficiaries under the will, the *onus* of "giving some reasonable explanation of the unnatural character of the will, or at least showing that it is not the offspring of mental defect, obliquity, or perversion."

6.  *Charge as to. explanation of "suspicious circumstance."*—A charge requested on the contested probate of a will, instructing the jury that, if the proponents and principal beneficiaries under its provisions had a "controlling agency in procuring its execution, it is universally regarded as a very suspicious circumstance, and requiring the fullest explanation," requires too high a degree of proof, and is properly refused.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

In the matter of the last will and testament of Mrs. Anna O. Knox, deceased, which was propounded for probate by William Knox and Alex. Troy, who were therein named as executors, and was contested by Edward N. Knox, a grandchild, on the grounds of testamentary incapacity, undue influence, and fraud. The testatrix died on the 14th June, 1890, being at the time over eighty years of age. The papers propounded for probate consisted of a will dated September 16th, 1889, and a codicil dated May 2d, 1890, each attested by two witnesses. By the terms of the will, the testatrix bequeathed $2,000 to the pastor of St. Peter's church in Montgomery, or his successor in office, to be used in saying masses for her family, and in such other manner as in their discretion "they may see proper to use it;" gave $10,000 to the sisters of Loretto in Montgomery, to be used and invested for the benefit of her great-grand daughter, a granddaughter of William Knox; bequeathed $250 each to three servants, and bequeathed and devised all the residue of her property to William Knox and Mrs. Myra Semmes. By the terms of the codicil, she changed the bequest for the benefit of her great-granddaughter, directed that she should be educated at a seminary in Georgetown, District of Columbia, that the money should

be invested and used for her benefit, and, in the event of her death without children, "shall revert to her grandfather, William Knox, and, if he die first, to my heirs equally, after her death without children;" and gave several other small pecuniary legacies.

By an amendment of their petition, the proponents asked probate also of another testamentary paper, executed by the testatrix on the 28th June, 1883, and attested by two witnesses, which purported to be executed in execution of testamentary powers conferred on her by her deceased husband, by deeds therein particularly described, as copied in the opinion of this court; and by which she made the following disposition of the property therein referred to : "Now therefore, in execution of said power, I do hereby, by this my last will, direct that the said one half of said property so held in trust be conveyed to and divided between my daughter Myra and my son William, to be held by their heirs forever. In witness whereof," &c. The contestant objected to the allowance of this amendment when it was offered, and also moved to strike it out on the evidence adduced, on the ground that it was nevoked by the testamentary papers afterwards executed by Mrs. Knox; not only the papers propounded for probate, but another will executed by her in 1887, and afterwards destroyed, as to which J. M. Falkner, who wrote it, testified that it "was like the will of 1889, except that it gave $5,000 to R. H. Knox;" and that it was destroyed in his presence, by William Knox, by the direction of the testatrix, in 1888. The court allowed the amendment to be made, and instructed the jury that, "as matter of law, said testamentary paper was not revoked by the subsequent wills;" to which rulings the contestant excepted. Said Falkner testified, that he wrote the will of 1889 according to the instructions of Mrs. Knox, and was with her for more than an hour; that her mind seemed bright and clear, and he could not see that she was under any undue excitement; and that neither William Knox nor Mrs. Semmes was present when the will was executed, though they were in the house. It was proved that the codicil was written by Mrs. Semmes, and the only subscribing witness who was examined testified that she did not see or hear it read over to Mrs. Knox before signing it. The proponents proved, also, that Mrs. Knox executed another will in 1875, and another in 1879, in neither of which was the contestant's name mentioned. The contestant himself testified, and other witnesses testified in his behalf, that William Knox exercised great control over his mother, and that she was

32

afraid of him, especially when he was intoxicated; and that Mrs. Semmes exercised great influence over her mother, particularly during her last illness. The proponents themselves denied the exercise of any undue influence on their part towards their mother, and proved facts and circumstances rebutting it; and there was also evidence by several witnesses as to the mental and physical condition of Mrs. Knox, her habits, partialities, prejudices, &c.; but all this evidence is material only to the questions raised by the charges given and refused.

The court gave the following charges to the jury at the instance of the proponents, to which the contestant duly excepted:

(1.) "As a matter of law, that portion of the will of 1883 propounded for probate was not revoked by the wills said to have been executed by Anna O. Knox in the years 1887, 1889, 1890."

(2.) "Influences of one kind or another surround every rational being, and operate necessarily in determining his course of conduct under every relation of life. Within due and reasonable limits such influences afford no grounds of legal objection to his acts; hence mere passion, or prejudice, the influence of peculiar religious or secular training, of personal associations, of opinions, right or wrong, imbibed in the natural course of one's experience and contact with society, can not be set up as undue, and as sufficient of themselves to defeat a will."

(3.) "The influence which, of itself, will vitiate or defeat a will, must be proved to be undue. Such undue influence is defined as that which compels the testator to do that which is against his will, from fear, the desire of peace, or some feeling which he is unable to resist, and which is tantamount to force or fear."

(4.) "Even undue influence can not of itself defeat or vitiate a will when offered for probate, unless the evidence proves to the satisfaction of the jury the two following points: first, that the influence was in *fact* exercised; and second, that this influence by its exercise was effectual in producing the peculiar will offered for probate."

(5.) "If there was anything peculiar in the temperament or moods of thought of the testatrix, so far as susceptibility is thereby shown, all these present proper considerations for the jury; but, if the jury believe from the evidence that the will here propounded for probate, and mentioned in the issue here joined between the parties, was duly made, signed and published by the testatrix as her last will and testament,

in the presence of the subscribing witnesses thereto, and that the provisions of said will were at the time of the execution of the will by her fully understood and approved, and were in accordance with her then choice and intention; and if the jury are not satisfied by the evidence that fraud or undue influence induced the execution of said will, then, upon this state of facts, the jury ought to find the issues in favor of proponents, and against contestant."

(6.) "If the will of Anna O. Knox mentioned in the issues joined in this cause was executed by her in the presence of the subscribing witnesses thereto while she was of sound mind and disposing memory, and capable of making a will, then, before the jury can by their verdict invalidate said will so executed by her, they must be satisfied by the evidence, and by a comparison of the will in all its provisions, and under all the exterior influences which were brought to bear upon its execution, with the testatrix as she then was, that such a will could not well and reasonably be the result of the free and uncontrolled action of such a person so operated upon."

(7.) "The law treats the right of testamentary disposition with great kindness. If questioned, it must be on strong grounds."

(8.) "The law presumes that the testatrix was of sound and disposing mind and memory at the time of making her will, and the burden of proving that she was not of sound and disposing mind and memory at the time of making her will is on the contestant."

(9.) "Undue influence is influence that, operating on the mind of the testatrix, constrains her to do that which is against her will, and in some degree destroyed her free agency, but which, from fear, the desire of peace, or some other cause than affection, she is unable to resist; and unless the jury believe from the evidence that Anna O. Knox was constrained by another to make her will against her own wishes, they should find the issues against the contestant."

(10.) "If the jury believe from the evidence that, at the time of the making of her will, Anna O. Knox had mind and memory enough to recollect the property she wished to bequeath, the persons to whom she wished to bequeath it, and the manner in which she wished to dispose of it, and her will was not procured by fraud or undue influence, she had a right to make such disposition of her property as partiality, pride or caprice might dictate."

(12.) "If the jury should find from the evidence that

Anna O. Knox was of sound mind, but addicted to the use of drugs or opiates, that would not incapacitate her from making a will while she was not under the influence of them."

(13.) "Stronger proof should be required to raise the presumption of undue influence in the case of a will, than of a deed or contract. The same rule does not apply with equal force to benefactions received under wills and deeds of gift, but there exists a well grounded distinction between the two classes of cases. Stronger proof is, and manifestly should be, required to raise a presumption of undue influence in the case of a will, than of a deed or contract; for the former, unlike the latter, can not take effect until the giver is dead, and therefore in a condition entirely incapacitating his further enjoyment or use of the subject of his testamentary disposition. Improper influence may be often inferred to have operated in producing gifts, when the same evidence would fail to authorize such an inference in case of a legacy or devise."

(15.) "If the jury are satisfied that the testatrix, at the time of the execution of the several papers propounded as her will, was capable of exercising thought and affection—if she knew what she was about, and had memory and judgment, her will can not be invalidated on the ground of insanity; neither can it be set aside on the ground of undue influence, unless such influence amounted to a degree of restraint such as the testatrix was too weak to resist, such as deprived her of her own free agency, and prevented her from doing as she pleased with her property; neither advice nor argument nor persuasion will vitiate a will made freely, and from conviction, though such will might not have been made but for such advice and persuasion."

(16.) "Undue influence, to vitiate a will, must have been actually exercised to produce the particular will, and this must be operative at the very time of the execution of the particular paper in controversy as a will; and the burden of proving that such influence was undue, and was operative at the time of the execution of the paper, and caused its execution contrary to the free and independent wishes of the person making the will, is on the contestant, and not on the proponent."

(17.) "And the jury must be satisfied by a comparison of the will in all its provisions, and under all the exterior influences which were brought to bear upon its execution with the maker of it as she then was, that such a will could not be the result of the free and uncontrolled action of such a

person so acted upon, before they can by their verdict invalidate it."

(18.) "To set aside a will of a person of sound mind for having been obtained by undue influence, it is not sufficient to show that the circumstances attending its execution are consistent with the hypothesis of its having been obtained by undue influence. It must be shown that they are inconsistent with a contrary hypothesis, and the undue influence exercised in relation to the will itself, not an influence in relation to other matters or transactions."

(20.) "The fact that a will executed with due solemnity by a competent person, containing clauses and provisions in favor of the person or persons alleged to have exercised undue influence, if *sufficient* [suffered] to remain unrevoked for any considerable time after the alleged causes have ceased to operate, or before they commenced to operate, is evidence that it was freely executed, and that it gave expression to the settled wish of the testatrix respecting her property and her affections towards the donees."

(21.) "The execution of a number of wills running through a number of years by a testator, in which a particular relation is not mentioned as a beneficiary, is evidence that it was the settled purpose of such testator to exclude such person from her testamentary bounty."

The contestant asked the following charges in writing, and duly excepted to their refusal :

(X.) "Where a will is unreasonable in its provisions, and inconsistent with the duties of the testator or testatrix with reference to his or her family and property, or what is usually denominated an inofficious testament, and the jury find from the evidence in the cause that the will or wills and codicil propounded for probate are of such character, this, of itself, will impose on those claiming under the instrument the necessity of giving some reasonable explanation of the unnatural character of the will, or at least of showing that its character is not the offspring of mental defect, obliquity, or perversion."

(Y.) "If the jury find from the evidence that Wm. Knox or Mrs. Myra Semmes exercised such an influence over the mind and acts of Mrs. A. O. Knox as to take away from her her free agency, or to substitute their will for hers, then they will be authorized to find against such will as to the legacies tainted by said undue influence."

(Z.) "If the jury find from the evidence that Wm. Knox or Mrs. Myra Semmes are largely benefitted by the provisions of the instruments propounded for probate as the will

[Knox v. Knox.]

and testament of Mrs. A. O. Knox, and further find that they had a controlling agency in procuring their execution, it is universally regarded as a very suspicious circumstance, and requiring the fullest explanation."

The jury having returned a verdict in favor of the will, the contestant took an appeal to the Circuit Court, where the case was heard on errors assigned on the record; and the judgment of the Probate Court being there affirmed, he now appeals to this court, and again assigns as error the several charges given, and the refusal of the charges asked, together with the allowance of the amendment asking probate of the will of 1883.

CHAS. WILKINSON, for appellant.

SEMPLE & GUNTER, TOMPKINS & TROY, contra.

COLEMAN, J.—The case comes to this court by appeal from the Circuit Court, to which court an appeal had been taken from the decree and judgment rendered by the Probate Court of Montgomery county, on a contest of the validity of the will of Mrs. Anna O. Knox. On June 28th, 1883, testatrix executed in due form an instrument purporting to be her last will and testament. One provision of this will was in the following words : "And whereas certain powers were vested in me by two deeds executed by my deceased husband, William Knox, the one to William S. Donnell, trustee, dated May 30th, 1853, and the other to Thomas J. Semmes, trustee, dated December 18th, 1856, over one half of the property, real and personal, conveyed by said deeds, and held under the said trusts thereof, to be exercised by last will ; now therefore, under the execution of said power, I do hereby by my last will direct," &c., disposing of the property. So much of this instrument as contained the exercise of the power therein specified was offered, in connection with the will and codicil made by testatrix on the 16th day of September, 1889, and as a part of testatrix's will which was offered for probate. The bill of exceptions does not undertake to set out all the evidence ; in fact there is nothing in the bill of exceptions which indicates that other evidence than that set out was not before the court. Looking at the two instruments together, we can not say the one executed in 1883 was not a testamentary exercise of the power authorized by the deeds of trust referred to ; and there is certainly nothing in evidence to show that the power thus

[Knox v. Knox.]

exercised was subsequently revoked. We find no error in the ruling of the court in this respect.

The grounds of contest were testamentary incapacity, undue influence, and fraud. What constitutes "testamentary capacity," or "sound and disposing mind and memory," as established in this State, is : if the testatrix had mind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to make—to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other—she had, in contemplation of law, a sound mind.—*Kramer v. Weinart*, 81 Ala. 416 ; *Taylor v. Kelly*, 31 Ala. 59.

As to undue influence, the rule as declared in *Bancroft v. Otis*, 91 Ala. 290, is as follows : "The undue influence which will avoid a will, must amount to coercion or fraud ; ideas which involve actual intent to control the testator against his will. The law never presumes fraud, or the evil intent and unlawful acts essential to the coercion here contemplated. There must be some proof of these things. They can not be considered to have been done, merely because the proponent had the power to coerce, or to defraud."

In *Eastis v. Montgomery*, 93 Ala. 293, it is said : "The undue influence which will avoid a will, must amount to coercion or fraud, an influence tantamount to force or fear, and which destroys the free agency of the party, and constrains him to do what is against his will. Mere persuasion or argument addressed to the judgment or affections, in which there is no fraud or deceit, does not constitute undue influence.".

There was some evidence in the case of *Eastis v. Montgomery*, *supra*, which tended to show that, on the part of a preferred legatee, he was at times disrespectful, abusive, and ill-treated testatrix, as in the present case ; but, as the evidence failed to show that such conduct operated to influence testatrix at the time of the execution of the will, it was held by a majority of the court that it was not improper for the court to instruct the jury, "that there was no evidence in the case of any threats to induce or cause testatrix to make the will contrary to her intention."

When the probate of a will is contested on the ground of mental incapacity, or undue influence, the real issue is as to the condition of the mind, or the operation and effect of undue influence, at the particular time of the execution of

the will. The condition of the mind of the testate prior to the execution of the will, and all facts and circumstances which tend to elucidate its condition, or to show the freedom of the will, or that it was unduly coerced and influenced at the particular time, although such facts and circumstances may have existed or occurred previous to the time of the execution of the will, are admissible in evidence. *O'Donnell v. Rodiger,* 76 Ala. 226; *Kramer v. Weinart,* 81 Ala. 415. Tested by these principles, which have been often adjudicated, and others which are familiar, we find no error in the charges given by the court to the jury.

In charge No. 20 there appears evidently an error in copying. It is conceded by counsel on both sides, that the original charge read "if suffered" instead of "if sufficient," and should be thus corrected. With this correction the charge is free from error.

Charge "X" requested by contestant is objectionable for many reasons. It is misleading. In the next place, the law does not undertake to prescribe the duties of a testator to his family, in regard to the disposition of his property. And again, although a testator might not dispose of his property equally to his next of kin, that fact alone does not raise a presumption of mental incapacity or undue influence. The manner in which a testator disposes of his property is a fact in evidence, to be considered with other facts in determining the issue; but there is no conclusion of law from such a fact as to shift the burden of proof upon proponent, or the beneficiaries under the will, to show a sound mind, or freedom of will, on the part of the testator. It is a mere circumstance to be weighed by the jury. *Eastis v. Montgomery, supra.*

Charge marked "Y" was properly refused. As was previously declared in this opinion, to sustain the contest of the probate of a will on the ground of undue influence, the evidence must show that such undue influence operated at the time of the execution of the will. This principle is not recognized in charge Y. We also think the charge abstract. There is no evidence in the record to show "undue influence," as contemplated by the law.

Charge "Z" was properly refused. It is abstract, and is objectionable for the further reason, that it requires a higher degree of proof than the law demands. When the jury is reasonably satisfied from the evidence of any fact in civil cases, that is all that is required. But, when a charge asserts that any fact requires the "fullest" explanation, we

[Knox v. Paull.]

have no legal scales to measure or weigh with any degree of definiteness the testimony necessary to meet this demand.

We find no error in the record, and the judgment is affirmed.