(76 South. 352)

WEST v. ARRINGTON et al. (3 Div. 269.)

(Supreme Court of Alabama. May 31, 1917. Rehearing Denied June 30, 1917.)

1. WILLS ⬩52(1)—CONTEST—INCAPACITY—BURDEN OF PROOF.

In a will contest under Code 1907, §§ 6207, 6209, 6196, etc., where contestees had introduced the original will and the depositions of the attesting witnesses, the burden of establishing mental incapacity was on contestant, and the court properly denied contestant's motion to require contestees to introduce all of their affirmative testimony with reference to the sanity of testator.

2. WILLS ⬩294—CONTEST—DEPOSITIONS OF ATTESTING WITNESSES.

Under the express terms of Code 1907, § 6209, the depositions of the attesting witnesses were admissible, and it was not error to allow contestees to have before the jury the depositions of the attesting witnesses taken in the probate proceedings, and also introduce the same witnesses to testify in support of contestees' side.

3. APPEAL AND ERROR ⬩1078(4)—WAIVER OF ERROR—BRIEF.

Where the action of the court in sustaining an objection to testimony made a basis of assignment of error was not insisted upon in the brief filed, it was waived.

4. EVIDENCE ⬩558(4)—EXPERTS—CROSS-EXAMINATION.

Sustaining a general objection of contestees to contestant's question on cross-examination of a sanity witness, "What would you think of the sanity of a man who made a will of his property to a dead horse?" was not error.

5. TRIAL ⬩260(5)—REQUESTED INSTRUCTIONS—REFUSAL.

Where the jury had the benefit in a given instruction of a correct definition of the mental capacity required to make a valid will, if any of the charges requested by contestant expressed a different or amplified definition or were but reiterations of the definition given, their refusal was not error, in view of Acts 1915, p. 815.

6. WILLS ⬩52(3)—INSANITY—BURDEN OF PROOF—GOING FORWARD WITH EVIDENCE.

Where contestant has shown habitual and fixed insanity, the burden shifts to proponent to bring forward evidence showing that the will was made during a lucid interval.

7. WILLS ⬩52(3)—INSANITY—BURDEN OF PROOF.

If testator was at times wholly insane so as not to know the subject-matter under discussion, but at other times had sufficient mental capacity to know and understand what he was doing, then, in order to defeat a probate of the will, the burden is on contestant to show that at the time of the particular instance when the will was executed testator did not have sufficient mental capacity to know and understand what he was doing.

8. WILLS ⬩ 52(1)—INSANITY—PRESUMPTIONS.

The law presumes that the testator was of sound mind and disposing memory, and the burden of proving the contrary is on contestant.

9. WILLS ⬩50—INSANITY—UNDERSTANDING OF TESTATOR.

If at the time of making his will testator had mind and memory enough to recollect the property wished to be bequeathed, the persons to whom he wished to bequeath it, and the manner in which he wished to dispose of it, then he had a right to make a disposition of his property.

Anderson, C. J., and McClellan and Mayfield, JJ., dissenting in part.

Appeal from Chancery Court, Montgomery County; O. S. Lewis, Chancellor.

Will contest between Cora West and A. H. Arrington, executor, and others. From the decree of the chancery court confirming the validity of the will, contestant appeals. Affirmed.

The following are charges 7 and 9 given for contestee:

(7) If you believe from the evidence that Samuel B. Bennett was at times wholly insane so as not to know the subject-matter under discussion, but at other times had sufficient mental capacity to know and understand what he was doing, then in order to defeat the probate of the will the burden is on the contestant to show that at the time or the particular instant when the will was executed said Samuel Bennett did not have sufficient mental capacity to know and understand what he was doing.

(9) The law presumes that the testator was of sound mind and disposing memory at the time of making the will, and the burden of proving that he was not of sound mind and disposing memory at the time of making his will is on the contestant.

W. A. Gunter and A. B. Chilton, both of Montgomery, and John P. Phillips, of Chillicothe, Ohio, for appellant. John R. Tyson, of Montgomery, for appellees.

McCLELLAN, J. This is an appeal from the decree of the chancery court, confirming the validity of the instrument executed by Samuel B. Bennett, now deceased, on the 19th day of March, 1914, as the last will and testament of said Bennett. The contest in equity following the probate of the instrument, in the probate court, was instituted and conducted in accordance with Code, §§ 6207, 6209, 6196, etc. The appellant is the contestant. The grounds of contest were these: (a) That Bennett did not possess testamentary capacity to make a will when this instrument was executed; (b) that the instrument was the product of insane delusions.

[1] After the contestees (appellees) had introduced in evidence the original will and the depositions of the witnesses attesting the execution of the paper as a will, taken in the probate court, "proving due execution of the same," the contestees rested their case. The contestant thereupon moved "the court to require the contestees to introduce all of their affirmative testimony with reference to the sanity of the testator before the contestant introduces her proof of his mental condition at the time of the making of the will." The court overruled the motion. The initial burden of proof to establish mental incapacity

having passed to and being upon the contestant, the proponent having made out a prima facie case by proof of the execution of the instrument according to the form prescribed by law, the stated motion was not well taken, and was properly overruled. O'Donnell v. Rodiger, 76 Ala. 227, 52 Am. Rep. 322; Cummings v. McDonnell, 189 Ala. 96, 102, 66 South. 717.

[2] Complaint is made that the contestees were allowed, over objection of contestant, to have before the jury the deposition of the attesting witnesses taken in the probate proceeding before the probate court, and also to introduce these same witnesses in support of the contestees' side of the issues tendered by the stated grounds of contest. By the express terms of the statute (Code, § 6209), these depositions were admissible; and it would have been error to exclude them. Stephens v. Richardson, 189 Ala. 360, 365, 66 South. 497. Obviously the provisions of that statute were not intended to qualify, much less deny, the absolute right of the supporters of the instrument's validity and testamentary character to meet, if they could, the issues tendered by the grounds of contest. Plainly, there was no possible error in this ruling of the court.

[3, 4] Contestees' witness Arrington, the executor named in the instrument, testified that the testator was sane, after having testified to "an intimate and extended acquaintanceship with the deceased, Bennett, since 1910 up to his death." The bill of exceptions then recites:

"On cross-examination, amongst other questions, the contestant asked the witness what would he think of the sanity of a man who made a will of his property to a dead horse."

On objection of contestees, stating no grounds thereof or therefor, the court refused to allow the question. This action of the court is made the basis of assignment of error numbered 34. It does not appear to have been insisted upon in the brief filed, under the rule, on submission of the appeal, and was, in consequence, waived. L. & N. R. R. Co. v. Holland, 173 Ala. 675, 55 South. 1001; Jebeles v. Booze, 181 Ala. 456, 462, 62 South. 12. However, had this assignment been seasonably urged for appellant, this action of the court could not have been held for error, since, at most, the discretion reposed in the court in such matters was not at all improperly exerted. Barfield v. South Highlands Infirmary, 191 Ala. 553, 567, 68 South. 30, Ann. Cas. 1916C, 1097.

[5] What has been said disposes of all questions argued for appellant except those referable to three special instructions given the jury at the instance of contestees and 28 special instructions requested by and refused to contestant. With this number of given and refused instructions brought under review by the appeal it is not desirable or practicable to accord individual treatment to all of them in the opinion. All of them relate either to the mental capacity of Bennett to constitute this instrument a will, or to the burden of proof and its conditionally alternating obligations in that regard.

The measure and quality of the mental capacity requisite to enable a testator to make a valid will was stated by this court in Taylor v. Kelly, 31 Ala. 59, 72, 68 Am. Dec. 150, to be this, to in substance quote it: If the testator had memory and mind enough to recollect the property he was about to bequeath, and the persons to whom he wished to will it, and the manner in which he wished it to be disposed of, and to know and understand the business he was engaged in, he had, in contemplation of law, a sound mind; and great age, bodily infirmity, and impaired mind will not vitiate a will made by one possessing such capacity. In the same opinion it was also declared that it was not essential to the execution of a valid will that the testator's memory should be perfect and his mind unimpaired. The doctrine, as well as in many cases the exact language of that decision, has been repeatedly reaffirmed and reiterated by this court. Council v. Mayhew, 172 Ala. 295, 307, 55 South. 314; Mullen v. Johnson, 157 Ala. 262, 265, 266, 47 South. 584; Schieffelin v. Schieffelin, 127 Ala. 14, 37, 28 South. 687; Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33; Knox v. Knox, 95 Ala. 495, 503, 11 South. 125, 36 Am. St. Rep. 235; Kramer v. Weinert, 81 Ala. 414, 416, 1 South. 26, among others. The definition has been accepted as affording the standard definition of the mental capacity requisite to make a valid will. As presently constituted, this court entertains the same view its elders entertained, that this definition, so long accepted and observed in Alabama, not only cannot be now improved upon, but that a wise conservatism forbids an effort, at this late day, to even reconsider the definition of Taylor v. Kelly with a view to its amplification or change. The jury had the benefit of this definition through appropriate instruction by the court. If any of the special charges requested for and refused to the contestant expressed, or were interpretable as expressing, a different or an amplified definition than that this court has so long approved, they were properly refused for that reason; or, on the other hand, if such refused charges were but reiterations of the definition afforded by Taylor v. Kelly, their refusal was not error. Gen. Acts 1915, p. 815.

[6] The law in this state, governing the burden of proof on the issue tendered by a ground of contest of a will asserting the testator's mental incapacity to make a will at the time, has long been settled. It is that, after the proponent of the instrument has made out his prima facie case by proof of execution thereof by the testator according to the forms prescribed by law, the burden of proof is on the contestant to show mental

incapacity to make a will; that this the contestant may do by showing "habitual and fixed insanity" of the testator anterior to the time the paper was executed, and that when this character of insanity is shown the burden of proof shifts to the proponent, if he would sustain the instrument, to bring forward evidence inviting the conclusion that at the time of the execution of the instrument the testator had a lucid interval, and that the will was made during such interval. O'Donnell v. Rodiger, 76 Ala. 222, 52 Am. Rep. 322; Stubbs v. Houston, 33 Ala. 555; Cummings v. McDonnell, 189 Ala. 96, 66 South. 717. These long-established rules were given to the jury by the court. Having clearly so instructed the jury, the court fully performed its function and duty with respect thereto, and was, of course, under no further obligation in that connection, thereby rendering impossible the commission of any error in declining contestant's requests for special instructions that either repeated the rules already given in charge to the jury or defined different rules on this subject. Gen. Acts, 1915, p. 815.

[7, 8] The report of the appeal will reproduce special charges 7 and 9 given to the jury at the request of contestees. That numbered 7 is first argued in the brief for appellant. Its manifest purpose was to advise the jury with respect to the burden of proof, where the mind of a testator was diseased, wholly deranged at times, and not deranged at other times. The object and effect was not to define mental capacity to make a valid will. In the circumstances hypothesized in this charge, the burden of proof remains upon the contestant—does not shift to the proponent or contestee as when "habitual and fixed insanity" is shown—to show that the testator was mentally incapacitated to make a will at the time he undertook to constitute the instrument in question his last will and testament. If its theory, purpose, or effect had been to define mental capacity to make a will, rather than to advise the jury as to the burden of proof, clearly it would have been subject to criticism under our decisions. This particular instruction (7) was approved in Cummings v. McDonnell, 189 Ala. 96, 104, 66 South. 717, where it was numbered 29. That numbered 9 is in accord with the established rule in this state, defining the burden of proof on the issue of mental capacity vel non to make a valid will. It is a reproduction of charge numbered 8, which was given to the jury on the trial of Knox v. Knox, 95 Ala. 495, 11 South. 125, 36 Am. St. Rep. 235. The court there found no fault in it. It is further justified by the consideration given by this court to charges 3 and 4 in Council v. Mayhew, 172 Ala. 299, 308, 55 South. 314. Charge 2, given at the instance of contestees, is as follows:

"If the jury believe from the evidence that, at the time of the making of his will Samuel B. Bennett had mind and memory enough to recollect the property he wished to bequeath, the persons to whom he wished to bequeath it, and the manner in which he wished to dispose of it, then he had a right to make such disposition of his property."

This charge does not measure up to the requirements of the standard definition given in Taylor v. Kelly, supra, and the many decisions in its line. It appropriates only a part of the language found in charge 10, brought under review in Knox v. Knox, 95 Ala. 495, 11 South. 125, 36 Am. St. Rep. 235. In that case the court appears to have reviewed 18 special charges given at the instance of proponent. No individual treatment was accorded charge 10 in the opinion. It is manifest from the opinion that the court did not intend to announce a different definition of requisite mental capacity to make a will from that set forth in Taylor v. Kelly, and Kramer v. Weinert, both of which are cited in the Knox Case, 95 Ala. 504, 11 South. 125, 36 Am. St. Rep. 235. Indeed, this is confirmed when we consider that the author of the opinion in the Knox Case said in the subsequent opinion in Burney v. Torrey, 100 Ala. 172, 14 South. 685, 46 Am. St. Rep. 33:

"The law is clearly and fully stated in Taylor v. Kelly, 31 Ala. 59 [68 Am. Dec. 150], and though different expressions have been used, in later decisions, *none were intended to alter or add to the requisites there declared.*" (Italics supplied.)

In all probability the difference between the definition set forth in the Taylor and Kramer Cases and that expressed, after a fashion, in charge 10 in the Knox Case did not appear to the court because a material feature of the charge was addressed to a disposition of property through the dictate of "partiality, pride or caprice"; and it may well have been that this thought in the instruction obscured the fact, in the judicial mind, that the requisites defined in the Taylor and Kramer Cases were not hypothesized in charge 10—one instruction, only, of 18 under review.

The charge here under review (numbered 2) pretermits this element of mental qualification included in the formula approved in the Taylor, Kramer, and other cases, the capacity to know and to understand the business in which the testator was engaged when he executed the instrument. To ignore that element, to permit its elimination from a definition so vital in the issue of mental capacity vel non to make a will, is but to change the law, to modify the standard that has been too long set up and reconfirmed to be the subject of debate, much less reconsideration. It is clear, we think, that a mind may have all the elements or possess the capacity to discharge the functions enumerated in this charge (2) and still be a mind incapacitated to know and to understand the business of making a testamentary disposition of property. The elements enumerated in charge 2 are essential to adequate mental capacity to

make a will, but they are much more restricted in processes and effects than the exercise by a mind of processes and qualities described in the phrase which requires capacity to know and to understand the business in which the testator is engaged, viz., the making of his will. The charge (2), affirmatively restricted, modified the approved formula in this state. It was hence error. We find no occasion, in this field of the law, to consult or to heed texts and decisions elsewhere, decisions delivered here having long since established the rules it is the duty of this court to observe. We have considered the suggestion that this error may have been cured by the oral charge of the court and by special charges given at the request of either or both of the litigants. This error was not removed of its necessarily prejudicial effect even neutralized by anything said otherwise to the jury. Notwithstanding the oral charge was an excellently framed instruction of a jury in this character of cause, it did not serve to render this error harmless. The only way to have cured the error or to have rendered it innocuous was to withdraw the charge. This was not done. For the single error in giving charge 2, the judgment should be reversed.

The majority of the court, consisting of Justices SAYRE, SOMERVILLE, GARDNER, and THOMAS, are of the opinion that a reversal of the decree should not follow the giving of charge 2 at the instance of the contestees. Doubtless the majority of the court will later set down the grounds of their conclusion.

ANDERSON, C. J., and MAYFIELD, J., concur in the opinion, and therefore hold that the decree should be reversed for the error in giving charge 2 at the instance of the contestees, and hence with the writer dissent.

It follows from the conclusion of the majority of the court that the decree below is affirmed.

Affirmed.

SAYRE, J. [9] I will briefly state my opinion in reference to charge 2, given at the instance of contestees. Of course, I take no issue with what was said of a similar charge in Taylor v. Kelly, 31 Ala. 59, 72, 68 Am. Dec. 150. But I do not find in that case any necessity for a cast iron formula in respect to the matter under consideration. It will be noted that the court, approving the charge given in that case, simply reproduced the language of counsel who framed the charge. The court cites Harrison v. Rowan, 3 Wash. C. C. 580, Fed. Cas. No. 6,141, and the charge then before the court followed very closely the language of Judge Bushrod Washington in Harrison v. Rowan, except that there was an inversion of the rhetorical members of the proposition laid down in the last-named case, where the language of the judge was as follows:

"As to the testator's capacity. He must, in the language of the law, have a sound and disposing mind and memory. In other words, he ought to be capable of making his will, with an understanding of the nature of the business in which he is engaged, a recollection of the property he means to dispose of, of the persons who are the objects of his bounty, and the manner in which it is to be distributed between them."

In the edition of Jarman before us (Bigelow's Sixth American [1892]) I have been unable to locate the relevant text to which the court must have referred in Taylor v. Kelly. As for Coleman v. Robertson, 17 Ala. 84, certainly there is nothing in it looking to the establishment of the language or the form of the charge in Taylor v. Kelly as a formula from which no variations are to be permitted.

In Kramer v. Weinert, 81 Ala. 414, 1 South. 26, the court, again, as I read its thought in its language, putting its most general proposition, a kind of summary, after a statement of its constituent elements, said:

"The rule, as established in this state, and sustained by the weight of authority, as the test of testamentary capacity in cases like the present, is, if the testatrix had mind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to make—to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other—she had, in contemplation of law, a sound mind."

The court also said:

"If the testatrix had mind and memory sufficiently sound to know and understand the business in which she was engaged, she possessed testamentary capacity. This, says Justice Washington, is the most simple and intelligent form of the inquiry."

Justice Washington had charged the jury in Stevens v. Vancleve, 4 Wash. C. C. 262, Fed. Cas. No. 13,412, in this language:

"The question is not so much what was the degree of memory possessed by the testator as this, Had he a disposing memory? Was he capable of recollecting the property he was about to bequeath, the manner of distributing it, and the object of his bounty? To sum up the whole in the most simple and intelligent form, Were his mind and memory sufficiently sound to enable him to know, and to understand, the business in which he was engaged, at the time when he executed his will?"

I think it may be said that there is a sort of rough formula, that is, a certain similarity in the form of stating testamentary capacity, that the courts generally have adopted; but this rough formula is in the language of charge 2 substantially, and omits the summary to which we have made reference. This will be seen in the note on page 63 of the Bigelow's Edition of Jarman on Wills, where cases from many jurisdictions are collected, with short statements of the effect of the decisions. Stating some of our cases along with the rest, the learned American editor discloses his understanding of their effect in the following language:

"Kramer v. Weinert, 81 Ala. 414 [1 South. 26] (enough if the testator had mind and memory sufficient to call up and remember the prop-

erty he was about to dispose of, the objects of his bounty, and the dispositions he wished to make, citing Taylor v. Kelly, 31 Ala. 59 [68 Am. Dec. 150]; Lowder v. Lowder, 58 Ind. 538); O'Donnell v. Rodiger, 76 Ala. 222 [52 Am. Rep. 322] (same formula)."

Knox v. Knox, 95 Ala. 495, 11 South. 125, 36 Am. St. Rep. 235, is an authority in favor of the trial court's ruling on charge 2. So far, as concerns the question here at issue the proposition of charge 10, given at the instance of appellee in that case, was that if the testatrix had mind and memory enough to recollect the property she wished to bequeath, the persons to whom she wished to bequeath it, and the manner in which she wished to dispose of it—the language copied into charge 2 in this case—then she had a right to make such disposition of her property. The charge there considered failed to summarize, that testatrix must have had mind and memory enough to know and understand the business in which she was engaged.

To repeat, in substance, my conclusion in respect, to the propriety of charge 2, the charge correctly stated the elements of testamentary capacity. It was not necessary that it should have stated the collective effect of those elements, as was done in Taylor v. Kelly, for, if testator recollected the property he wished to bequeath, the persons to whom he wished to bequeath it, and the manner in which he wished to dispose of it, then, in necessary consequence, he knew and understood the business in which he was engaged—the making of his will. I find nothing in any of our cases, or elsewhere, for that matter, to the contrary.

SOMERVILLE, GARDNER, and THOMAS, JJ., concur.