Wray v. Wray.

---

### WRAY *vs.* WRAY.

[BILL IN EQUITY BY WIFE FOR PERMANENT ALIMONY.]

| 33 | 187 |
|----|-----|
| 132 | 222 |

1. *Presumed continuance of insanity once established.*—Insanity being once established, its continuance is presumed until the contrary is proved.
2. *Insanity excuses adultery.*—Adultery, committed by the wife while insane, is no bar to her claim for alimony.
3. *When wife is entitled to decree for alimony.*—The failure of the husband to provide for his wife, while separated from him without fault on her part, and confined in a lunatic asylum, a sufficient maintenance and support, suitable to her condition and circumstances, entitles her to a decree for alimony.

APPEAL from the Chancery Court of Macon.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Mrs. Susan M. Wray, suing by
her next friend, against her husband, Albert G. Wray,
and sought a decree for alimony. The parties to the suit
are the same as to the case reported in 19 Ala. 522, which
was an application by Mr. Wray for a divorce, on the
ground of adultery committed by his wife. That appli-
cation was refused, although the fact of adultery was
proved, because it appeared that the wife was insane at
the time of its commission; the court holding, that adul-
tery on the part of the wife, committed while insane, was
no ground of divorce. This bill was filed after the final
disposition of the former case. It alleged, that the par-
ties were married in 1835, and lived together as husband
and wife until some time in 1848, when a separation took
place between them, and complainant was sent by her
husband back to her mother's house in Georgia; that the
defendant was possessed of a large estate, and received
several slaves by his said marriage with complainant;
that the complainant, in October, 1850, offered to return
to her husband's house, and to resume her conjugal
duties, but he refused to receive her; and that he also
refused to make any provision for her maintenance and
support.

The defendant answered the bill; alleging, that his
separation from his wife was caused by his discovery that
she had been faithless to him; that he gave her, at the
time of the separation, two negroes, and about three hun-
dred dollars in money; that he had since paid out over
one thousand dollars for her support and maintenance;
that the complainant, after the filing of the bill, had given
birth to an illegitimate child; and that the defendant,
since that time, had made arrangements for her board and
other expenses, as a first-class patient, at a lunatic asylum
in South Carolina, where she was confined.

The material facts established by the evidence are these:
Mrs. Wray was carried to the lunatic asylum, by her
friends, in April, 1849, and remained there until some

time in December, 1850, when she was discharged. For several years prior to 1849, she had been insane; and evidence was adduced, which the chancellor deemed sufficient, to show that her insanity still continued. In October, 1851, accompanied by a physician, she returned to the neighborhood where her husband was, and offered to resume conjugal relations with him; but he rejected her overtures. In April, 1852, she was carried back to the asylum, where she was delivered of a child in the month of July following; and she was still an inmate of the asylum when the several witnesses in the cause were examined. The slaves received by the defendant, by virtue of his marriage, were shown to have increased to about twenty-five in number; and his other property was variously estimated by the several witnesses at from $70,000 to $100,000. The master reported, on a reference, that the provision made by the defendant for the complainant's expenses at the asylum was about $450 per annum, and that it was insufficient; that about $1100 was a suitable provision for her comfortable support and enjoyment, as a first-class patient at the asylum, to which position she was entitled; and this report was confirmed by the chancellor, without exception by either party.

On final hearing, the chancellor rendered a decree for the complainant; directing the defendant to pay over, at the times and in the manner specified, the amount reported by the master as a proper allowance for the complainant's support, to be expended under the directions of the principal of the lunatic asylum; and ordering the cause to be retained on the docket, for future orders and decrees, as circumstances might require.

The chancellor's decree is now assigned as error.

ELMORE & YANCEY, for the appellant.

CLOPTON & LIGON, contra.

STONE, J.—In a contest between these parties, determined in this court at the June term, 1851, on an application by Mr. Wray for divorce, this court decided that Mrs. Susan M. Wray was insane at the time the acts were

committed, for which the divorce was sought.—See Wray v. Wray, 19 Ala. 522. The report of that case was in evidence in this case, as shown by the record.

The proof of her mental condition since that time is probably sufficient to show that, at no time since her deflection from the path of propriety, has she been either legally or morally accountable. We need not, however, decide this question. Insanity being once established, its continuance is presumed until the contrary is proved. Rawdon v. Rawdon, 28 Ala. 565. The contrary is not proved in this case.

It is claimed for appellant, that as he has proposed to provide for Mrs. Wray a support, and has actually made some provision for her, he should not be decreed to do what he has already done. If he had, up to the time of the trial, made for his insane wife sufficient provision, and this, independent of any coercive measures through the courts of the country, we would consider the legal question presented. The report of the register, however, which was confirmed by the chancellor—confirmed, too, without any exceptions to the register's report—proves conclusively that the support offered and supplied by Mr. Wray is greatly inadequate. This renders a decision of the above question unnecessary.

The principles settled in the case of Mims v. Mims, at the present term, are decisive of this, and prove that the chancellor committed no error.

The decree of the chancellor is affirmed.

RICE, C. J., not sitting.