# Murphree v. Senn, *et al.*

### Contest on Probate of Will.

1. *Testamentary capacity; evidence.*—Where a testatrix, an unmarried woman, having two sisters and a brother, who are poor, left her estate to a young boy not related to her, and named his father as executor, the fact that the latter was a wealthy man is irrelevant to the issue of the testamentary capacity of the testatrix.

2. *Same.*—On an issue as to the testamentary capacity of the testatrix, an unsigned and undated letter purporting to have been written to the person named as executor, found among the papers of testatrix after her death, is not admissible in evidence.

3. *Witness not an expert or intimate acquaintance can not state opinion as to testatrix's mental incapacity without the facts supporting it.* Witness whose acquaintance with the testatrix is shown not to have been long and intimate can not state their opinions as to mental capacity without stating the facts on which their opinions are based.

4. *Proof that on one occasion long prior to will testatrix "acted like she was crazy" is inadmissible.*—On the contest of a will on the ground of the mental incapacity of the testatrix, where the will was executed in 1891, testimony that in 1870 or 1871 she acted, on one occasion, "like she was temporarily crazy" does not even tend to show that she was without mental capacity when the will was executed, unless such mental aberration is shown to have some connection with her condition at the latter date by proof of intervening periods of menta disturbance.

[Murphree v. Senn, *et al.*]

5. *Presumption as to continuance of insanity prior to will.*—If it is shown that a testator was insane at any time prior to the making of the will, this fact will not support the presumption that the insanity continued to the making of the will, unless it is shown that it was habitual and fixed.

6. *Burden of proof on contestant to show mental incapacity.*—The contestants must show the mental incapacity of the testator, before the proponent can be called on to show that the will was made in a lucid interval,

APPEAL from the Probate Court of Pike.

Tried before the Hon. W. J. HILLIARD.

Savannah Shofner died in Pike county, Alabama, February 21, 1895 and left surving her two sisters and one brother, viz., L. A. Senn, the wife of N. W. Senn, of Pike county Alabama, E. A. Teer, the wife of William Teer, and William Shofner, the latter named sister and the brother living in Texas. Prior to her death, Savannah Shofner executed her last will and testament, on December 16, 1891, in which she bequeathed and devised her household and kitchen furniture to her sister, L. A. Senn, and the rest of her property, real and personal she bequeathed and devised to Jake Murphree, the son of J. K. Murphree, and nominated J. K. Murphree her executor without bond. On March 5, 1895, J. K, Murphree propunded the said will for probate in the probate court of Pike county. On April 1, 1895, L. A. Senn, E. A, Teer, and William Shofner, heirs-at-law of said testatrix, filed their contest of the probate of said will, on the grounds, 1st, want of testamentary capacity in the testatrix, and 2d, fraud and undue influence in the procurement of the execution of said will by the testatrix.

Under the opinion of this case, it is deemed unnecessary to set out in detail the evidence adduced on the hearing of this contest.

Upon the introduction of all the evidence, the proponent asked the court to give to the jury the following written charge : "If the jury believe all the evidence they should find for the proponent." The court refused to give this charge, and the proponent duly excepted ; and also separately excepted to the court's giving, at the request of the contestant, the following written charges : (1.) "If the jury believe from the evidence that the testatrix was addicted to spells or attacks such

[Murphree v. Senn, *et al.*]

as to impair her mind, and there were intermissions of such spells or attacks, during which intermission she was able to work and transact business, yet there must have been more than mere intermissions—there must have been lucid intervals such as to enable her to understand the nature of the will, the nature and character of her estate, and the character and conditions in life of the devisees, or it is the duty of the jury to find for the contestants.'' (2.) "If the jury believe from the evidence, that the testatrix had brothers and sisters who were poor, and that Jake Murphree, the beneficiary of the will, is a young son of J. K. Murphree, and not related to her, and that his father is wealthy, this is a circumstance to which the jury should look in determining whether there was undue influence exercised over the mind of testatrix in making her will, and as to whether there was fraud in the light of all the other evidence in procuring the execution of the will.'' (4.) "If the jury believe from the evidence there was undue influence used over testatrix in making the will in question, or that there was fraud practiced on her in the procurement of its execution, or that she was mentally incapacitated to make it, either of which would be sufficient to invalidate it, then it would be the duty of the jury to find for the contestants.'' (5.) "If it is shown by the evidence that the testatrix was afflicted with permanent insanity before making of the will, then the burden is shifted to the proponents, and they must prove that the testatrix was mentally capacitated to make the will at the time it was made, and if this is not so proven by proponent, it is the duty of the jury to find for contestants.'' (6.) "It is the duty of the jury to determine from the evidence in the case whether there is undue influence in the procurement of the execution of the will, and it is not within the province of the court to say what the testimony proves; and it is not necessary for any facts, other than those which produce reasonable satisfaction of the fact, that undue influence was practiced by some one in the procurement of the execution of the will.''

There was judgment for the contestants. The proponent appeals, and assigns as error the refusal of the court to give the general affirmative charge requested by

him, and the giving of the charges asked by the contestants.

WORTHY & FOSTER and A. A. WILEY, for the appellant.

D. A. BAKER and W. L. PARKER, for the appellee.

HARALSON, J.—The will of the testatrix was contested by her brother and two sisters on the grounds, "that at the time it is alleged she executed said will, she was wanting in testamentary capacity," and "that fraud and undue influence were brought to bear upon the said Savannah Shofner, in the procurement of the execution of said instrument."

The execution of the will was duly proved by its two subscribing witnesses, one offered by the proponent, and the other by the contestants, who show that it was executed freely and voluntarily.

We have carefully examined the evidence in the transcript. It would serve no good purpose to review it. It is practically without conflict, and shows, with all reasonable certainty, that neither of the grounds, on which the will was contested, had any foundation in fact; but, it does satisfactorily appear that the testatrix had enough testamentary capacity and made her will, disposing of her property, according to her own desires, and without any undue influence.

If this case is to be tried again, it should be disencumbered of much illegal evidence that was admitted on the other trial, some of it, so far as appears, without objection. That J. K. Murphree, the father of the devisee and legatee, was a rich man, had nothing to do with the issues. The unsigned and undated letter, found after her death among her papers, purporting to have been written by testatrix to J. K. Murphree, was not competent to go to the jury; nor was the acquaintanceship of Mrs. L. A. Senn and F. B. Lignoskki shown to have been so long and intimate with the testator, as to authorize them to give their opinion of testatrix' mental capacity, without stating the facts upon which they based their opinions. The first named lived in Texas, and testified that while on a visit to her sister (the testatrix) in 1870 or 1871, "she acted like a crazy woman;" and the other, who lived in the same house with her, in 1890 or 1891,

stated that he saw her "act strangely." Our late case of *Burney v. Torrey*,, 100 Ala, 157, lays down the rules on this subject so clearly, as to be a sufficient guide to the court on another trial, if had. It may be stated further, that if it were shown from the facts stated, that so far back as 1870 or 1871, testatrix acted, on one occasion, like she was temporarily crazy, that fact would not even tend to show that she was without testamentary capacity in December, 1891, when she executed her will, unless such mental aberation were shown to have had some connextion with her condition at the latter date, by proof of intervening periods of mental disturbance. The enquiry in such cases is directed to the mental capacity of the party at the time of the execution of the will. That was the issue on that point, tendered by contestants, in their allegation that testatrix was then mentally incapable of executing the will; and the burden was on them to establish that fact, to the satisfaction of the jury. There was no evidence outside of that referred to, given by these two witnesses, that tended to support this allegation, and that was not pertinent. Generally, without more, in the case of a person shown to have been of continuous, exceptional testamentary capacity, the fact that she was temporarily beside herself twenty years previously, would not show that she continued to be or was deranged, when she made her will. If it were shown that a testator was insane at any time prior to the making of the will, this fact would not support the presumption, that the insanity continued to the making of the will, unless it were also shown, that the insanity was habitual and fixed, The burden was on contestants to establish such incapacity before the proponent could be called on to show, that the will was made in a lucid interval.—*Johnson v. Armstrong*, 97 Ala. 731; *Henry v. Hall*, 17 So. Rep. 187; *O'Donnell v. Rodiger*, 76 Ala. 222.

The general charge as requested by the proponent should have been given, and the charges asked and given for contestants should have been refused.

Reversed and remanded.