CHARLES S. GRAHAM *et al.*

*v.*

ALICE DEUTERMAN *et al.*

*Opinion filed October 24, 1905.*

1. WILLS—*adverse opinions as to testamentary capacity cannot prevail against established facts.* Opinions of witnesses that the testator was mentally incompetent to transact business or make a will, based largely upon the fact that the testator was near-sighted and feeble, are entitled to but little weight, where the evidence shows that at the times covered by the testimony of such witnesses the testator did transact business and fully understood the business in which he was engaged when making the will.

2. SAME—*evidence tending only to blacken reputation of testator for honesty is inadmissible.* Evidence which tends to show that many years before the will was executed the testator had been guilty of the theft of small articles from his neighbors is not admissible in evidence in a proceeding to contest his will upon the ground of want of testamentary capacity.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

WELTY, STERLING & WHITMORE, and BLINN & COVEY, for plaintiffs in error.

LIVINGSTON & BACH, and F. L. CAPPS, for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

William A. Graham, of Atlanta, in Logan county, executed his last will and testament on the 6th day of July, 1901, and died on the 14th day of the following month. He gave his personal property absolutely to his widow, Mary A. Graham, also his real estate during her natural life, and charged her with the support and education of his minor son, Arthur E. Graham, during his minority, and upon her death devised his real estate in fee to his sons Charles S. and Arthur E. Graham, in equal portions. He left him surviving seven children other than Charles S. and Arthur E., to each of whom he bequeathed $25. The will was admitted to probate, and Mary A. and Charles S. Graham qualified as executrix and executor thereof. The estate consisted of a small amount of personal property and a farm of one hundred and sixty acres, of the value of $16,000, upon which William A. Graham, his wife and Arthur E. resided as a home at the time of the testator's death. He was indebted in the sum of $3000, a portion of which was secured by a mortgage upon the farm. Upon the third day of November, 1902, the seven children of William A. Graham other than Charles S. and Arthur E. filed a bill in the circuit court of McLean county to contest the will, on the ground of want of testamentary capacity in the testator to make the will, and on the ground that the testator was induced to make the will in consequence of the undue influence of Mary A. and Charles S. Graham. Answers were filed denying the want of testamentary capacity on the part of the testator and that the execution of the will was the result of undue influence. A trial was had before a jury, and there was a finding in favor of the will upon the question of undue influence under the direction of the court, but the jury found that William A. Graham was mentally incapable of making said

will at the date of its execution. A motion for a new trial was overruled, and a decree was entered setting aside the will. That decree was reversed by this court (*Graham* v. *Deuterman,* 206 Ill. 378,) and the case was remanded for a new trial. Upon its re-instatement in the circuit court a second trial was had with a like result as the first, and the record has again been brought to this court for review, by writ of error, by the proponents of the will.

When the case was here the first time the testimony of the several witnesses who testified upon the trial for and against the will was set out in the opinion of the court then filed, and it was held, after a review of such testimony, that the verdict was manifestly against the clear weight of the evidence. On the second trial the testimony of the witnesses who testified against the will upon the first trial was reproduced before the jury, together with that of other witnesses whose testimony was of the same character, but no new facts tending to prove the incapacity of the testator to make a will, which we deem material, were submitted to the jury upon the second trial, and the material testimony found in this record is therefore substantially the same as was found in the record when the case was here before, and from a careful consideration thereof we are forced to the same conclusion which we then reached, viz., that the verdict is manifestly against the clear weight of the evidence.

It appears from the undisputed evidence that William A. Graham was seventy-two years of age at the time he made his will; that prior to that time, for many years, he had lived upon the farm upon which he died; that for some years prior to his death the farm had been rented, and that during that time he had collected the rent; that up to within a few weeks of his death he made deposits, accepted certificates of deposit and had checks cashed, which he had received in payment of farm produce or otherwise, at the bank in the village near where he resided. He also conveyed land, borrowed money, gave mortgages, bought mer-

chandise, and transacted, generally, such business as is customary with men of his occupation and standing in life. In February, 1900, he went to a justice of the peace in the neighborhood and had prepared and executed a will, the provisions of which were identical with those of the present will, with the exception that he gave his widow only a life interest in his personal property. Shortly before the making of the will he gave to the township assessor a list of his property for the purpose of assessment for taxation, and in 1900 the census enumerator obtained from him the necessary data upon which to base his report with reference to himself and family. At the time he executed the will he appeared to be rational and in the same mental condition in which he had been through life.

Mr. R. R. Quisenberry, one of the witnesses to the will, testified: "Am forty-three years of age and reside in Atlanta. Am book-keeper in the People's Bank. I have lived in Atlanta about fourteen years. Was acquainted with William A. Graham in his lifetime and knew him about twelve years before he died. Atlanta is a mile and a half from where he lived. I saw him occasionally during the time I knew him. He transacted business at the bank. He sometimes had deposits there in the way of certificates. Sometimes he would cash checks. He would bring in the checks of other men or customers of the bank, and sometimes I would pay him the cash and sometimes part cash and give him a certificate of deposit for the balance. The last time I remember of his being in the bank was about six months prior to his death. I was present at the time the will spoken of was executed. I was requested to go there by Mr. Harris. Mr. Arnold, Mr. Harris and myself went to Mr. Graham's house and found him in bed. He sat up in bed and I talked to him. We were there about half an hour, I should judge. The will was read over by Mr. Harris by sections, and at the reading of the will Mr. Graham says, 'That is my will.' He then requested me to sign the will as a witness. Mr.

Harris explained the meaning of a couple of sections of the will so Mr. Graham understood it. He said, 'That is as I would have it.' I saw him sign the will. The paper now shown me purporting to be the last will and testament of William A. Graham is the one he signed. That is my signature as a witness. Mr. Arnold, Mr. Harris and myself were present when he signed it, and they were also present when I signed it as a witness with Mr. Graham. We signed in the presence of Mr. Graham. As far as I could see, at the time Mr. Graham executed this will I thought his mind was all right. I think he was capable of transacting ordinary business. I did not discover any difference in his mental condition from what it always had been."

Mr. J. E. Arnold, the other attesting witness, testified: "My age is forty-eight years. I reside in Atlanta. I have lived in Atlanta about thirty-one years. My occupation is selling groceries. I was acquainted with William A. Graham in his lifetime. I had known him practically all my life. He lived about a mile and a half from Atlanta. I was supervisor of Atlanta for four years and am still a member of the board of education and have been for sixteen years. William A. Graham's place of doing business was in Atlanta. He had some trouble with his eyesight and always wore glasses. He was a farmer by occupation. I think he died in August, 1901. While I knew him I transacted business with him—sold him groceries. I sold to him and his family all he bought from 1883 to 1894. I never transacted any business with him except selling him groceries. After 1893 or 1894 I didn't sell him many, but I sold him some every once in a while. I saw him up to the time,—it was perhaps six months before he died,—and then I saw him again the date of the will. I was there at the time he signed the will at his house. I had a conversation with him at that time. He was then in bed. When we went in he was lying in bed, and I think Mrs. Graham propped him up. Mr. Quisenberry and Mr. Harris were with me. Mr. Quisenberry

lived in Atlanta. After we got there Mr. Harris read the will over by sections. He said that was his will just as he wanted it; he had given the other children their portion, excepting Charles and Arthur. While we were talking Mr. Harris asked Mr. Graham why he was making his will that way, and he said he had given the other children their portion. I saw him sign the paper. I was present at the time. Mr. Quisenberry and Mr. Harris were also present. I don't just remember what was said about witnessing the will, but I signed it as a witness at the request of Mr. Graham,—that is, William A. Graham. The signature 'J. E. Arnold' is my signature as witness to the will. To the best of my knowledge when Mr. Graham executed his will he was a man of sound mind and memory. I think at that time he was capable of transacting ordinary business. I could not see any difference, so far as his mental faculties were concerned, from what they always had been."

The evidence shows the testator was near-sighted; that he had met with an accident which prevented him from walking readily, and that during the last years of his life he had consumption, from which disease he died. A number of witnesses testified that in their opinion he was incapable of making a will or transacting ordinary business at the time the will bears date. None of those witnesses, however, testified to any fact or facts which showed the testator to be mentally incapable of transacting ordinary business or making a will, but such opinions appear to have been based mainly upon the ground that the testator appeared to be in a weak condition physically, and that when he went from home some member of the family usually accompanied him. The testator was undoubtedly in a weak physical condition, and by reason of being crippled and his eyesight being affected, his wife or his son, or someone else, usually, but not always, accompanied him when he went to the village or other place away from the farm. The opinions of witnesses that he was incapacitated to do business or to make a will are entitled to ·

but little weight when the evidence clearly shows at the several times covered by the testimony of the witnesses he did do business intelligently, and that he fully understood the business in which he was engaged at the time he executed the will.

The court, upon the trial, permitted several witnesses to testify, over the objection of the proponents, to certain facts which tended to show that William A. Graham, when comparatively a young man, was guilty of the larceny of certain small articles, such as grain sacks, whipple-trees, umbrellas, spades, cord-wood, etc., from persons who resided in the neighborhood where he then lived. Some of the transactions referred to occurred prior to the war of the Rebellion, and none within fifteen or twenty years of the date of the execution of the will. This testimony was wholly foreign to the issue being tried and could have had but one effect, and that was to blacken the memory of the testator and prejudice the jurors against him, and induce them to hold the will invalid on the ground that the testator was unworthy to make a will and had made one which was unjust to the contestants. The testimony as to such transactions was very indefinite and unsatisfactory, but if it were conceded that all that the witnesses testified to was true, and that many years before the will was executed,—or, for that matter, immediately before it was executed,—the testator had stolen a number of grain sacks, a spade, several umbrellas and other small articles, we are unable to see how those facts incapacitated him mentally to make a will. The testimony was incompetent and should have been excluded.

The decree of the circuit court will be reversed and the cause remanded for another trial.

*Reversed and remanded.*