12 So.2d 357

**TOWLES v. PETTUS et al.**

**6 Div. 71.**

Supreme Court of Alabama.

Feb. 11, 1943.

Rehearing Denied March 25, 1943.

194

Griffith & Entrekin, of Cullman, for ap-
pellant.

Erle Pettus, of Birmingham, and J. T. Johnson, of Oneonta, for appellees.

196

BROWN, Justice.

The appeal is from the decree of the Probate Court of Cullman County, rendered on the verdict of a jury, denying probate of the alleged last will and testament of J. O. Towles, deceased, filed for probate by appellant and contested by appellees for alleged want of testamentary capacity on the part of said Towles, and for undue influence alleged to have been exercised over the said Towles by appellant, and certain members of his family, or some of them, and by parties unknown. Coghill v. Kennedy, 119 Ala. 641, 24 So. 459.

Towles, a bachelor, semi-recluse, eccentric, and, as some of the testimony tended to show, afflicted with kleptomania, died on March 16, 1942, at the age of 79 years, leaving an estate of considerable value which, as the evidence shows, he had accumulated by hard living and rigid economy. He left surviving as his heirs at law, one brother, the appellant 76 years of age, eight nieces and nephews, children of deceased brothers and sister.

The paper propounded for probate bears date of March 13, 1942, and, subject to the payment of debts, bequeathed to A. G. or Green Towles, the appellant, the entire estate of the said J. O. Towles.

The evidence goes to show that on Thursday, March 12, said alleged testate went to the office of Dr. Wood in Hanceville for treatment, and was advised that he had flu with two and one-half degrees of temperature and was too sick to be up. That the doctor advised him to go home and go to bed and he would treat him there.

That he left the doctor's office to go to his home, something like two hundred yards distant. Dr. Wood on the next day, which was Friday, March 13th, went to the home of said testate and he was not there; that he passed the truck of Green Towles as he was going to the home of his patient, but did not recognize who it was, though his son who was driving his car stated that it was Towles in the car.

That he then proceeded to Green's home, from a quarter to a half mile distant, and when he got there about noon, he found J. O. Towles in bed, suffering from double pneumonia, with temperature around one hundred and two degrees, and testified that said alleged testate had "flu pneumonia, one of the most fatal forms of pneumonia."

The witness Dr. Wood testified further that he called to see his patient around 4:30 or 5:00 o'clock in the afternoon of March 13, 1942, and the patient was then being nursed by Mrs. Tankersley, the daughter of Green Towles; that his temperature had been reduced in consequence of the medicine administered—sulfathiazole, one given by the witness and the other by Mrs. Tankersley, the nurse.

Soon after he had taken the temperature of said testate, Mr. Dean and Mr. Warren came to the room where testate was, Mr. Dean having with him the typewritten paper, subsequently signed by said testate and witnessed by Dr. Wood, John Dean and A. P. Warren, all of whom signed as subscribing witnesses. At that time Mr. Tankersley and Mrs. Tankersley were present in the room and Green Towles was in the front part of the house.

When first asked by counsel for contestant whether or not John Towles, at the time he signed the paper, was a person of sound mind, Dr. Wood answered: "I don't know just how to answer it. I believe John Towles knew what he was doing because he repeated it twice about his 'beloved brother.' As I said, I don't know how to answer whether he was a man of

sound mind at that time. I would not say." On redirect examination by proponent, Dr. Wood stated: "From his demeanor and his action and his conversation I think he was a man with a soundness of mind that would qualify him to attend to the business at hand—that is the execution of a will on the day that he executed it."

Dr. Wood testified that Towles, after signing the paper, stated: "That is what I want. My beloved brother to have what I have got."

The subscribing witness Dean testified, to state the substance of his testimony, that on Thursday night, before the alleged will was signed on Friday afternoon, he was attending an air wardens' meeting at the school house, when Tankersley, the son-in-law of Green Towles, came for him, and he went with him to Green Towles' house, and John was there and told him he had sent for him to write his will; that Mrs. Tankersley and her husband were in the room and Green was in the adjoining room. That he told John that he did not have a typewriter and that he would prepare it for him next day, and next day he communicated with "Judge Self," told Self how John wanted the will written and Self wrote the will, and on Friday afternoon he carried it to Green Towles' home, where John was, and that John signed it in his presence and in the presence of the other witnesses, and in his opinion John Towles was a man of sound mind. Dean also testified: "I can't recall that he made any statement after he signed the will."

Warren, the other subscribing witness, who went with Dean at his request, gave testimony to the same effect. The paper, after it was signed and witnessed, was delivered by witness Dean to A. G. Towles, who was named as the sole legatee.

On Saturday, the fourteenth, said alleged testator was carried to the hospital in Cullman, where his treatment was continued by Dr. Wood, until his death on the following Monday, March 16th.

After the patient was moved to the hospital his temperature fell below normal, and his pulse increased and finally went up to 150, and he passed.

The contestants offered the evidence of one professional witness, Dr. Dodson, whose testimony was based on hypothetical questions; and several lay witnesses who qualified by stating their acquaintance, observation and intimate knowledge of said testate, and his acts, character and conduct tending to show mental disorder, who testified that he was not, in their opinion, a person of sound mind. Peters v. State, 240 Ala. 531, 200 So. 404. Dr. Dodson's testimony goes to show that a man affected as the evidence shows J. O. Towles was at the time he undertook to execute the will, did not possess testamentary capacity.

After mature consideration, we are of opinion that the tendencies of the evidence stated above, and the evidence going to show a factual relation of confidence and trust existing between the two brothers, justified a submission of the issues in the case to the jury. Nelson v. Brown, 164 Ala. 397, 409, 51 So. 360, 137 Am.St.Rep. 61; Cannon v. Gilmer, 135 Ala. 302, 33. So. 659; Coghill v. Kennedy, 119 Ala. 641, 24 So. 459; McQueen v. Wilson et al., 131 Ala. 606, 31 So. 94; Posey et al. v. Donaldson, 189 Ala. 366, 66 So. 662.

The testimony of Dr. Dodson goes to show that: From study, observation and experience in the general practice of his profession as a physician, he had acquired knowledge not possessed by one not so experienced as to diseases and disorders of the brain, and this evidence warranted the holding by the trial court that he was qualified to express an opinion in answer to a hypothetical question based upon the material facts in evidence. Thaggard v. Vafes, 218 Ala. 609, 119 So. 647; Sovereign Camp, W. O. W., v. Screws, 218 Ala. 599, 119 So. 644; Parrish v. State, 139 Ala. 16, 36 So. 1012.

It is further insisted that the question to Dr. Dodson was subject to objection in that it assumed that testator's temperature was at 102 degrees at the time of his first call on the physician, when in fact it was only 101 degrees. This objection was not made to the question on the trial. Moreover the evidence shows that said testate's temperature was around 102 degrees at twelve o'clock on the day of the alleged execution of the will.

Dr. Wood, the attending physician, and a subscribing witness to the alleged will, and admitted to be qualified as an expert, was competent to express an opinion as to whether or not J. O. Towles had sufficient fever in connection with his physical weakness, to affect his mental faculties, but the question, the basis of assignment of error six, was leading and limited

to fever. The court cannot be put in error for sustaining the objection.

■ The witness Self, called to the witness stand by the contestants, testified on cross-examination that, some years ago he was called to the home of Green Towles or John Towles' home for the purpose of "*making* a will for John Towles." [Italics supplied.] He was then asked, "Did you draw a will for him at that time?" The court sustained the contestants' objection to the question. The question did not elicit testimony as to the acts and declarations of the alleged testator, but of the acts of the witness, and was not within the rule that the execution of a former will in conformity to a fixed purpose entertained and expressed by the alleged testator is admissible in proof of testamentary capacity. Couch v. Couch, 7 Ala. 519, 42 Am.Dec. 602; Hughes v. Hughes' Ex'r., 31 Ala. 519; 80 A.L.R. p. 966(2) Notes.

■ The statement of the proponent that he "expected to show by this witness and by others that it has been the purpose of John Towles throughout the years to leave everything he had to his brother, Green Towles, and that this will that this man wrote several years ago did follow this will exactly, * * * left everything to Green Towles," did not indicate what acts or declarations of the alleged testator he proposed to prove; nor did it embody a statement that John Towles gave expression to such purpose or that he executed the paper as his will. [GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., are of opinion that this offer was sufficient, and that the court erred in sustaining the contestants' objection to such evidence.]

■ The statement was but the conclusion of the proponent of what the evidence would show, "that it has been the purpose of John Towles through the years to leave everything he had to his brother," and not of facts which would tend to prove such purpose, and, therefore, was not within the rule of evidence above stated. Nor within the rule that acts and declarations of the testator with respect to the disposition of his property, not too remote, are admissible on the issue of undue influence, when independent evidence has been offered supporting such issue, as touching the testator's state of mind, its susceptibility to undue influence, even though the declarations are not a part of the res gestae. Coghill v. Kennedy, 119 Ala. 641, 24 So.

459; Lewis v. Martin, 210 Ala. 401, 98 So. 635; Schieffelin v. Schieffelin, 127 Ala. 14, 36, 28 So. 687; Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663; Wayne v. Huber, Exrs., 134 Or. 464, 291 P. 356, 79 A.L.R. p. 1427, and Anno. p. 1449 and Sub. III, p. 1459.

■ The facts and circumstances stated by the witness Floyd Brooks showing his acquaintance, association and dealings with the alleged testator, and the attending circumstances, qualified him as a lay witness to express an opinion as to whether or not John O. Towles was a man of sound mind, and the overruling of the proponent's objection was without error. Peters v. State, 240 Ala. 531, 200 So. 404 [supra.]

The same is true as to the testimony of witnesses Acquilla Jones, Mrs. Floyd Brooks, Mrs. Stewart and Carl Burkart.

■ The court did not err in overruling the proponent's several objections addressed to questions put to the witness Mrs. Garham, and the motion to exclude her testimony. This testimony, in connection with other testimony in the case, tended to show that said testator was afflicted with kleptomania.

The holding of the Illinois Supreme Court is that isolated acts of petty theft by the testator, twenty years or more prior to the execution of his will were not admissible to impeach his testamentary capacity. See Graham v. Deuterman, 217 Ill. 235, 75 N.E. 480.

■ Although the witness Quick was not qualified as a lay or non-expert witness, touching the alleged incompetency of J. O. Towles, and was not examined in respect thereto, the isolated fact testified to by him as occurring a few months before the alleged execution of the will was admissible in connection with the other evidence tending to support the issue of undue influence, as tending to show his mental condition and his susceptibility to such undue influence. Coghill v. Kennedy, 119 Ala. 641, 24 So. 459, supra; 28 Am.Juris. p. 759, § 132.

■ On like principles the testimony of Mrs. Ethel Cook as to the acts, declarations and appearance of John O. Towles, in November and December, 1941, shortly before, was admissible.

■ The relevancy of the testimony of the witness Sharp that said John Towles, two years before the trial, went to the

school house in Hanceville and gathered up "some old clothes and things—some overalls," and carried them away in his car, does not appear. For all that this testimony shows, he had a right to gather up said articles and carry them away. The court erred in overruling the proponent's motion to exclude "on the ground that it sheds no light on the issue."

The question to the witness George Burkart, put by contestants, referring to J. O. Towles, "He was worse than close, wasn't he?" was not answered, and the ruling of the court on the proponent's objection, if error, was without injury.

The relevancy of testimony of the witness Lila Johnson to the issue in the case is not apparent, but the objections to the questions eliciting the testimony were too general to put the court in error for overruling them, and the motion to exclude was rested on the ground that the facts stated were insufficient as a predicate for a non-expert opinion on the question of Towles' sanity. The witness was not questioned on that subject. We find no error here. Sanders v. Knox, 57 Ala. 80, 81.

The predicate laid by the testimony of the witness John Clark was sufficient to qualify him to express an opinion that Towles "Appeared to be a man with an unsound mind the last two or three years," and that, in his opinion and best judgment, he was of unsound mind. The several rulings of the court in respect to this testimony were free from error.

The same is true as to the testimony of the witnesses Dan Baker, Luther Jones and Claud Lee. Jones v. State, 181 Ala. 63, 61 So. 434.

The contestants' witness Agnes Morris testified to the general effect that her father, who is deceased, was a brother of J. O. Towles. That about eight years before the trial she asked him to refinance her home, which she was losing at the time and he refused, saying that he did not have the money. That she went to him about three times about it, the last time four years ago. That he knew witness's financial condition. "I asked him if he would refinance my place and he said 'No' that he would do it in a minute if he had it, but he didn't have it and could not help me, and I told him I would not come any more to ask for aid. I did tell him I knew he was financially able to do this for me and he said he was not and would not help

me. He had always been friendly and that was the reason I went to him. There was no trouble between us at all."

The proponent moved to exclude this testimony "on the ground it is not relevant and is immaterial" and the court overruled this motion, and exception was duly reserved. We are of opinion that this incident is too remote from the date of the alleged execution of the will, and the testimony sheds no light upon the condition of the testator's mind at the time the paper was signed, and his susceptibility to undue influence. It clearly is calculated to engender prejudice in the minds of the jury to the detriment of the proponents and the right of J. O. Towles to dispose of his property by his will as he saw fit. Graham v. Deuterman, 217 Ill. 235, 75 N.E. 480. The point at issue was the testator's mental capacity to make a will, on March 13, 1942, and his condition mentally at that time. 68 Corpus Juris, p. 416, § 9, p. 463, § 71.

The evidence touching the issues on trial was in dispute and we have no way of knowing what effect this testimony had in influencing the verdict of the jury against the proposed will.

The giving of charge one requested by the contestants was free from error. Gaither et al. v. Phillips, 199 Ala. 689, 75 So. 295.

The evidence touching the signing of the paper propounded as the will by J. O. Towles, as given by the subscribing witnesses, which we have stated, shows that he signed the paper in the presence of all the subscribing witnesses, but is in conflict as to whether he said anything after he signed. One of the witnesses testified that he said in effect that was his will, he wanted all his property to go to his "beloved brother." The others testified that he said nothing after he signed the will.

Charge four, given at the request of the contestants, asserts that if "Towles did not sign the alleged will in the presence of the subscribing witnesses *and* did not acknowledge his signature to them", they must find for the contestants.

The burden imposed on the proponent by this instruction to the jury, in the light of the undisputed evidence that the alleged testator signed the paper in the presence of all the subscribing witnesses, was greater than the statute requires. When the testator or some one in his pres-

ence and by his direction affixes the testator's signature on the will as the act of its completion, in the presence of the subscribing witnesses, and the witnesses subscribe in his presence, no acknowledgment is necessary to its valid execution. Code 1940, T. 61, § 24; Green et al. v. Davis, 228 Ala. 162, 153 So. 240; Reynolds et al. v. Massey, 219 Ala. 265, 122 So. 29.

In Stuck v. Howard, 213 Ala. 184, 104 So. 500, there were two witnesses who wrote their names on the alleged will as subscribing witnesses, but they both testified that the testator did not sign in their presence and his name was not on the will when they signed and that they never saw his name on the will at any time before they testified. Charge one approved in that case is the same as charge four here.

 Charge five is abstract and had a tendency to mislead the jury to conclude that a will that bequeathed property to the testator's next of kin was unnatural and should have been refused. Henry v. Hall, 106 Ala. 84, 99, 17 So. 187, 54 Am.St.Rep. 22.

Charge D given at the request of the complainant in Lewis v. Martin, 210 Ala. 401, 406, 98 So. 635, is similar if not identical with charge five above criticized, and all that was said of charge D in Lewis v. Martin is that it was approved in Gaither v. Phillips, 199 Ala. 689, 75 So. 295, 298. In treating the charge in the Gaither v. Phillips case, the court observed: "Charge 17, given for the contestant, should have been refused." The charge in Gaither's case was in the following language: "If you believe from the evidence that the will makes an unnatural disposition of the property, this fact must be taken into consideration in the determination of the issues here involved."

In Lewis v. Martin, 210 Ala. 401, 406, 98 So. 635, the testatrix devised all of her property to her brother and disinherited her husband and children, an unnatural disposition of property. Not so here. The will in the instant case, if sustained, gives the property to the next of kin (the only living brother of testator), he having no children.

 In Henry v. Hall, 106 Ala. 84, 17 So. 187, 192, 54 Am.St.Rep. 22, it was observed: "A will is not necessarily unnatural because of a discrimination between heirs of the same degree, or because of

the entire exclusion of a part or all of them."

While insanity is a disease of the mind, Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193, it is a matter of common knowledge, illustrated by the tendencies of the evidence in the instant case, that one's mind may become permanently impaired by age and physical weakness, yet this does not, as a matter of law, constitute insanity which destroys testamentary capacity, or shift the burden of proof from the contestants to the proponent. The rule stated in the cases cited to support the giving of Charge D at the request of contestants dealt with "habitual and fixed insanity," West v. Arrington et al., 200 Ala. 420, 76 So. 352, 354; "insanity", "shown to be habitual and permanent in its nature", Odom v. State, 174 Ala. 4, 9, 56 So. 913, 915; Melvin v. Murphy, 184 Ala. 188, 189, 63 So. 546; Murphree v. Senn et al., 107 Ala. 424, 18 So. 264; or judicially ascertained to exist, Wray v. Wray, 33 Ala. 187; Camp v. Dobson, 228 Ala. 32, 152 So. 38. See also Houston v. Grigsby, 217 Ala. 506, 116 So. 686.

 Charge D is unsound and invasive of the province of the jury.

We have examined the other questions argued and find nothing further that requires special notice.

For the errors noted, the judgment is reversed.

Reversed and remanded.

GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., concur as stated in the opinion.