This is an appeal from a judgment entered as the result of a jury verdict by the Circuit Court of Wilcox County in a will contest. The will of Delie Bennett was first filed in the probate court of Wilcox County by a grandson, Ernest Bennett, one of the beneficiaries of the will. The other beneficiaries are a daughter and four grandchildren. The will offered for probate was allegedly executed on October 11, 1974. After the will was offered, nine children of the deceased filed a contest and asked that the contest be tried in circuit court. The proceedings were duly removed to circuit court and on March 1, 1983, a verdict was rendered in favor of the contestants. Proponents then made a motion for a judgment notwithstanding the verdict or for a new trial, which was denied by operation of Rule 59.1, A.R.Civ.P. The contestants claim that Delie Bennett's will was invalid for two reasons: 1) she was not of sound mind at the time of the alleged execution of the will; and 2) the will offered for probate was not in fact signed by Delie Bennett. Proponents contended that although their mother was of unsound mind, she was still able to sign her name. The will offered for probate was executed by a mark.
In his attempt to reverse the judgment of the circuit court, Ernest Bennett, one of the proponents, contends that the court erred in several respects. His first claim of error is that the trial court abused its discretion in not allowing the testimony of the two attesting witnesses as to the soundness of the deceased's mind at the time of the execution of the will. Second, he claims that the court improperly refused to allow into evidence a prior will of Delie Bennett, dated March 13, 1957, which showed a fixed determination on the deceased's part, expressed by her over a number of years, to leave her property as she did in the will offered for probate. He says, further, that this will was proof that she was signing her name by mark as early as 1957. The contestants had been unanimous in their testimony that the deceased had a handwritten signature. Third, the *Page 537 
appellant claims that the court mistakenly refused to allow the proponents to question the contestants as to their financial condition. He claims that such testimony was admissible to prove motive or intent on her part to leave property to her less fortunate relatives. Fourth, the appellant claims that the trial court erred in giving this jury charge:
 If you are reasonably satisfied from the evidence that the testator suffered from habitual, fixed or permanent insanity as distinguished from spasmodic or temporary insanity prior to executing the will, the burden is then on the proponent to reasonably satisfy you from the evidence that the will was executed during a lucid interval. . . .
The appellant claims this charge was error because there was not even a scintilla of evidence that the testatrix suffered from "habitual," "fixed," or "permanent" insanity.
In response to the above claims made by the proponent, the contestants argue that the court did not err as claimed above, but that if it did, the error was harmless and not prejudicial to the proponents in any way. Citing Nottage v. Jones,388 So.2d 923 (Ala. 1980), Linnard v. Shields, 368 So.2d 14 (Ala. 1979), and Fletcher v. DeLoach, 360 So.2d 316 (Ala. 1978), they contend that in cases of this nature, the verdict of the jury will not be overturned unless shown to be clearly and palpably wrong. Furthermore, the trial court's refusal to grant the proponents' motion for judgment notwithstanding the verdict or a new trial only goes to strengthen the verdict and the judgment rendered thereon. Although we are of the opinion that each error, if taken singularly, may not have been, under the facts of this case, sufficient to overturn the jury's verdict, the combination of these errors was sufficient to seriously infect the factfinding process in this litigation. We reverse and remand for a new trial.
Proponent's strongest argument for reversal lies in the failure of the trial judge to allow the attesting witnesses to the will to give their opinion as to the soundness of the mind of Delie Bennett. The court stated that it would not allow this testimony because these witnesses could not say that they knew Delie Bennett before the execution date of the will, or since. One of the subscribing witnesses was a lawyer. The will was allegedly signed in his office. He did testify that the lady he prepared the will for identified herself as Delie Bennett; that she brought with her a prior will, executed by Delie Bennett; and that she had with her a deed conveying to Delie Bennett property located in Gees Bend. Although ordinarily the trial court is allowed a wide discretion in determining what witnesses will be allowed to testify to, based on opportunity to observe, physical capacity, and other factors, this court has carved out an exception as to attesting witnesses in will probate cases. This court judicially knows that a substantial number of wills in this state are drafted and executed in lawyers' offices and are attested to by them and members of their staff, although they may never have seen the client before or after the will was drawn and executed. Such persons are competent in this state to testify as to the soundness of mind of the testator without further qualification. Speaking for this court in 1951, Mr. Justice Simpson wrote:
 Attesting witnesses to a will are competent to give an opinion as to the mental capacity of the testator when the will was made, without other qualification as to association with the decedent and without stating facts on which the conclusion is based.
He cited earlier cases, Lowery v. Lowery, 225 Ala. 376,143 So. 556 (1932), and Shirley v. Ezell, 180 Ala. 352, 60 So. 905
(1913), as being in accord with that proposition of law. Inasmuch as one of the two grounds on which the will was claimed to be invalid was insanity, we are of the opinion that the proponents' cause was prejudiced when this testimony was erroneously disallowed.
Also, we believe it to be of not little importance that the trial court refused to allow the admission of an alleged prior will *Page 538 
of Delie Bennett dated March 13, 1957. The alleged 1957 will was offered for two purposes. It was offered as proof of testamentary capacity and to show that the deceased was signing documents by a mark as far back as 1957. Both the issue of mental capacity, and the question of the execution of the will were hotly contested in the trial court. In Towles v. Pettus,244 Ala. 192, 12 So.2d 357 (1943), this court held:
 The execution of a former will in conformity with a fixed purpose entertained and expressed by the alleged testator is admissible in the proof of testamentary capacity.
The converse is also true. In Hughes v. Hughes' Executor,31 Ala. 519 (1858), this court reversed the judgment of the trial court because it failed to allow a former will into evidence which showed non-conformity with the will being offered for probate.
The reason given by the trial judge for refusing to admit the 1957 will was that it was too remote in time to the present controversy — but the length of time between the 1957 will and the 1974 will is the very aspect of this testimony that makes it favorable to the proponents. Where a person acts consistently with a purpose he had many years back (and presumably when his mind was stronger and clearer), this is very persuasive evidence that the testator had sufficient testamentary capacity when he made a later will. We conclude that the 1957 will should have been admitted.
The appellant claims as a further basis for reversal the failure of the trial court to allow the proponents' attorney to cross-examine contestants on their financial condition. The attorney sought to show that the reason the testatrix willed her property to a daughter and grandchildren as opposed to willing her property to her children exclusively, was that the children were financially secure and had homes, while the grandchildren were not financially secure. The evidence was ruled inadmissible on the ground that it was immaterial. This testimony cannot be considered as immaterial. It goes to show the motivation of the testatrix in making the disposition she is claimed to have made in the will offered by the proponents.Eastis v. Montgomery, 95 Ala. 486, 11 So. 204 (1891). Dean Gamble has stated the rule as follows:
 In a will contest, evidence of a motive in the testator to make a will of the content of that offered for probate is admissible as tending to support the validity of the will. Consequently, in a contest on the ground of the testator's mental incapacity to make a will, the proponent has been permitted to prove that the contestants were in excellent financial condition at the time the will was made. Such evidence being admissible as tending to show a legitimate motive in the testator omitting them from the benefits of the will.
C. Gamble, McElroy's Alabama Evidence, § 45.02 (11) (3d ed. 1977).
However, we are inclined to uphold the trial judge's ruling on this issue, since one of the children had already testified as to the financial condition of the children. Additional testimony would have been merely cumulative. A court cannot be put in error if its ruling is proper, even though it assigns the wrong reasons.
Finally, the appellant says that the trial judge improperly instructed the jury when it charged that if the jury found the testatrix suffered from a habitual, fixed, or permanent insanity, as opposed to spasmodic or temporary insanity, prior to executing the will, then the burden was shifted to the proponents to satisfy them from the evidence that the will was executed during a lucid interval. At the outset, we note that there was not a scintilla of evidence that the testatrix suffered from a habitual, fixed, or permanent insanity. The contestants would not even categorize their mother as insane or "crazy," but said that her mind was not right and they were of the opinion that she could not make a will in 1974. However, this charge was submitted to both sides before the judge instructed the jury, and was not objected to at that *Page 539 
time. It was objected to by the proponents after it was submitted to the jury. A close question is presented as to whether the proponents waived their right to object to this obviously improper charge under the facts in this case. The proposition of law expounded therein is obviously sound, but is irrelevant to the matters sub judice. We discuss the matter here because as the case is remanded for retrial, and assuming that the evidence follows the course of the first trial, we apprise the trial court of the facility of such a charge in the varying fact situations that may come before it.
For the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded for a new trial consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.