Willie D. Horton appeals from a summary judgment entered in a consolidated action in which he, as a beneficiary, and other similarly situated beneficiaries challenged the will of Bertha G. Cofer, deceased, questioning her testamentary capacity at the time she executed the will. We reverse the trial court's judgment in favor of Billy Joe Rasberry, the personal representative of Bertha Cofer's estate.
Bertha Cofer executed her will on December 4, 1990; she died on January 28, 1999. On March 3, 1999, Rasberry filed a petition for the probate of Cofer's will in the probate court, attaching a copy of the will to his petition, and a petition for the issuance to him of letters testamentary. The probate court granted his petitions on April 28, 1999.
On August 23, 1999, various named heirs[1] of Bertha Cofer filed an action in the circuit court contesting Cofer's will by alleging a lack of testamentary capacity. Thereafter, on September 10, 1999, Willie D. Horton filed a second action in the circuit court challenging the will's validity on the basis of testamentary capacity. Specifically, the action filed by Willie D. Horton was based on the fact that Cofer had incorrectly stated in her will that she had five children when in fact she had six, and then proceeded to divide her estate among the five named children.[2] Horton and the other beneficiaries alleged that the will itself served as prima facie evidence of Cofer's incapacity at the time she executed it.
On February 28, 2000, the trial court consolidated the will-contest action filed by Willie D. Horton with the initial action that was filed by the other beneficiaries (for clarity and convenience Willie Horton and the other beneficiaries who filed the initial action will be referred to collectively as the "contestants").
In February 2002, Rasberry filed a motion for a summary judgment. After a hearing, the trial court granted the summary-judgment motion. Willie Horton, on behalf of all of the contestants, filed a notice of appeal to the Supreme Court; that court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
In reviewing a summary judgment in a case involving the issue of testamentary capacity, our supreme court has stated:
 "On a motion for summary judgment, the burden is initially on the movant to make a prima facie showing that there is no genuine issue of material fact (i.e., that there is no dispute as to any material fact) and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957
(Ala. 1992); Elgin v. Alfa Corp., 598 So.2d 807 (Ala. 1992). `The *Page 157 
burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact.' McClendon, at 958; Elgin, at 810-11.
 "Rule 56 is read in conjunction with the `substantial evidence rule,' § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). When reviewing a summary judgment, this Court considers the record in a light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Carter v. Innisfree Hotel, Inc., 661 So.2d 1174 (Ala. 1995)."
Allen v. Sconyers, 669 So.2d 113, 115 (Ala. 1995).
A testatrix must have testamentary capacity in order to execute a valid will. Specifically, she must have
 "`mind and memory sufficient to recall and remember the property she was about to bequeath, and the objects of her bounty, and the disposition which she wished to make — to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other. . . .'"
Fletcher v. DeLoach, 360 So.2d 316, 318 (Ala. 1978) (quoting Knox v.Knox, 95 Ala. 495, 503, 11 So. 125, 128 (1892) (emphasis added)). However, it is presumed that every person who has attained the age of majority has the capacity to make a valid will, and the person challenging the will bears the burden of proving a lack of testamentary capacity. Id. This may be shown either by evidence of "a permanent type of insanity prior to the execution of the will" (which is not at issue in the present case) or evidence indicating that the testatrix "did not have testamentary capacity at the time she executed the will." Id.
Rasberry supported his summary-judgment motion with a copy of Bertha Cofer's will, which was a self-proving will witnessed by two witnesses and notarized. See § 43-8-132(a), Ala. Code 1975. In addition, Rasberry filed a sworn affidavit in which he stated, in pertinent part, that Cofer was his mother and that he "never knew her to suffer from permanent or temporary insanity" and that it was his "belief that on . . . the date Ms. Cofer made her will, . . . she knew the people to whom she intended [her] property to pass at her death."
In response to Rasberry's summary-judgment motion, the contestants relied only on Cofer's will itself. Specifically, they point out that Cofer expressly stated in her will that she had five children, when in fact, she had six children, and that she does not include one of her children in what purports to be a complete list of those children.[3]
The contestants argue that therefore the will itself constitutes evidence that Bertha Cofer did not know the objects of her bounty. *Page 158 
The question presented is whether the record contains "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgement [could] reasonably infer" (West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989))that at the time she executed her will, Cofer did not have "mind and memory sufficient to recall . . . the objects of her bounty." Fletcher, 360 So.2d at 318. Rasberry contends that the contestants, in fact, introduced no evidence indicating that Cofer was unaware of the objects of her bounty. We disagree. In this case, the terms of the will itself provide such evidence.
 "Clearly the terms of the will itself may be considered in deciding whether the insanity actuated the testator's mind in composing it. This is only an application of the general principle which obtains in the trial of will cases. Admittedly, if the instrument does not express the delusion itself — as by making the testator's deceased wife his executrix — it cannot be said to be evidence in the sense that, standing alone and because of unjust provisions, it would support a finding of invalidity."
J.E. Macy, Annotation, Insane Delusion as Invalidating a Will, 175 A.L.R. 882, 970 (1948) (emphasis added). As indicated by the emphasized verbiage, the instrument itself may express the delusion that prevents the testator from having testamentary capacity. The fact that the instrument in the present case does so is the difference in this case and such cases as Smith v. Vice, 641 So.2d 785 (Ala. 1994), upon which Rasberry attempts to rely. Cf. Goodbar v. Lidikay, 136 Ind. 1, 35 N.E. 691
(1893) (stating that a devise of property that does not belong to a testator is admissible as bearing on the question of testamentary capacity); Re: Buckman's Will, 64 Vt. 313, 24 A. 252 (1892) (to like effect). Cofer's erroneous declaration as to the number of children she had and who they are goes directly to the issue whether the testatrix knew the objects of her bounty at the time she executed the will. Accordingly, we conclude that the summary judgment in this case was inappropriate.
We emphasize that this is not a case in which a testator merely elects to leave nothing to a child. In Smith v. Vice, 641 So.2d 785 (Ala. 1994), for example, the Supreme Court concluded that, in light of the testatrix's perception of her daughter's actions in swearing out a warrant for the testatrix's arrest, the fact that the will left nothing to the daughter did not indicate a lack of testamentary capacity. We note, however, that in Smith, unlike the present case, there is no indication that the testatrix actually affirmatively misstated in her will the number of children she had, or who they were. In other words, there was no evidence, as there is in this case, indicating that the testatrix was not even aware of one of the objects of her bounty. Seealso Kramer v. Weinert, 81 Ala. 414, 417, 1 So. 26, 27 (1887) ("The failure of memory, unless it be entire, or extend to the immediatefamily and property of the deceased testator, or [be such] that [the testator] is unable to recall and retain the constituents of the business sufficiently long for its completion, is not of itself a legal standard of testamentary capacity." (Emphasis added.)).
Viewing all evidentiary materials in the light most favorable to the nonmovant and resolving all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party, as we must (Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990)),[4] we conclude that *Page 159 
evidence was presented from which fair-minded jurors reasonably could infer that the testatrix did not know the objects of her bounty at the time she executed the will. Accordingly, we reverse the judgment of the trial court and remand the cause for further proceedings.
REVERSED AND REMANDED.
Yates, P.J., and Crawley, Thompson, and Pittman, JJ., concur.
[1] Larry Horton, Jackie R. Price, Shirley Thomas, and Wayne Davis.
[2] Cofer omitted a disabled child, Jack Green Rasberry, from her will. The record does not indicate the nature or severity of Jack Green Rasberry's disability.
[3] Specifically, the testatrix states in her will:
 "I have five children, namely, W. C. Horton, Billy Joe Rasberry, Betty Sue Evans, Bobby Frank Rasberry, and Willie Daniel Horton."
[4] Of course, a different standard would apply at trial to the factfinder's consideration of such evidence as may then be before it; by reversing the trial court's summary judgment, therefore, we do not express any opinion with respect to the ultimate resolution of the factual issue presented.