THOMPSON, Judge.
Phyllis Dianne Hayes, the primary beneficiary of a contested will, appeals, the entry of a summary judgment in favor of the adult children of Clayton M. Reynolds (“Reynolds”), deceased, that invalidated the will. Claiming that Reynolds lacked the requisite testamentary capacity when he executed the will, Paula R. Baran, Jamie R. Caldwell, and Clayton M. Reynolds III (“the children”), all of whom are the children of Reynolds, contested the will’s validity in the probate court of Macon County. The matter was removed to the Macon Circuit Court (“the trial court”) pursuant to § 43-8-198, Ala.Code 1975.
The children moved for a summary judgment, and the parties submitted briefs to the trial court. After a hearing on the motion, the trial court entered a summary judgment in favor of the children.[1] The trial court determined that “the overwhelming medical psychiatric evidence” and “the entire record submitted” on the motion for a summary judgment supported its judgment. Hayes timely appealed to the supreme court, which transferred the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Reynolds, a retired telephone technician and radio operator in the Merchant Marine, resided in Macon County until his death on June 16, 2002. In May 2000, Reynolds executed a will in which he devised all of his property and assets to his three children-and a life estate in his house to his cohabitating female companion, Phyllis Dianne Hayes. Reynolds’s ■ longtime attorney, Joel Scarborough, Jr., drafted the will in May 2000. In August 2000, Reynolds asked his two daughters to help him manage his finances, and he gave one of his daughters, Jamie Caldwell, his general power of attorney.
In September 2000, Reynolds’s regular physician referred -him to Dr. Stephen Bryan at the Alabama Neurological Center in Montgomery. Dr. Bryan diagnosed Reynolds as having Alzheimer-type dementia related to alcohol consumption, In June 2001, Reynolds underwent heart surgery. Reynolds stayed in the hospital for one month.after his surgery, and,, due to the apparent ■ worsening of his mental state, Reynolds was referred to Warren Jackson; Ph.D., in Birmingham, to undergo a comprehensive neuropsychological evaluation.
Dr. Jackson examined Reynolds in July 2001. Reynolds had not consumed alcohol in over 30 days at the time of that evaluation. At the time of the evaluation, Reynolds was 72 years old and was taking six different, prescription medications. Dr. Jackson testified that three of those medications — Ativan, Aricept, and Serax — could affect a patient’s state of mind.
Dr. Jackson diagnosed Reynolds with Alzheimer-type dementia. Dr. Jackson noted that some of the short-term memory tests indicated that Reynolds “had no re *996 call whatsoever.” Dr. Jackson opined that he expected Reynolds’s mental state to “decline over time.” When asked if Reynolds would have been able to absorb information after the date of the evaluation, Dr. Jackson responded “absolutely not.” Dr. Jackson advised Reynolds’s family not to allow him to operate an automobile and to encourage him not to consume alcohol because alcohol could exacerbate Reynolds’s symptoms.
Shortly after Dr. Jackson’s diagnosis, Hayes, against the wishes of the children, informed Reynolds about his Alzheimer-type dementia. The children testified that Hayes also told Reynolds that the children had somehow arranged the evaluation or diagnosis in order to prevent Reynolds from making another will. Hayes served as Reynolds’s primary caregiver after his surgery, and each month Caldwell, via Hayes, provided money for support to Reynolds. Reynolds continued to drive his automobile and consume alcohol during that time.
According to the children, Reynolds became increasingly hostile towards them, a fact that they contend was exacerbated by Hayes’s influence. In the fall of 2001, Reynolds chased Caldwell with a shovel, and, on another occasion, he pushed her to the ground. The children testified that Reynolds’s mental state steadily deteriorated after his June 2001 heart surgery.
In January 2002, Reynolds approached Scarborough about drafting a new will. Because he was aware of Dr. Jackson’s diagnosis, Scarborough arranged for Reynolds to undergo another psychological evaluation. That evaluation, performed by Dr. Paul Blanton, supported Dr. Jackson’s diagnosis. Dr. Blanton reported that, at the time of the evaluation, Reynolds did not know the day of the month or the approximate time of day. Scarborough refused to draft a new will for Reynolds.
In February 2002, the children petitioned the probate court to establish a guardianship and conservatorship for Reynolds. The probate court held a hearing on the matter on April 30, 2002. After hearing the testimony of several witnesses, the probate court took the matter under advisement and ultimately appointed Hayes to be Reynolds’s guardian and Caldwell and Baran to be conservators of Reynolds’s estate. The probate judge testified in his deposition in this matter that Reynolds stated at the April 30, 2002, hearing that he planned to draft a new will and exclude the children from sharing in his estate. The probate judge also testified that Reynolds appeared to understand the questions asked of him during the hearing and gave appropriate answers to the questions. Nonetheless, on June 11, 2002, the probate judge determined that Reynolds was no longer capable of managing “his own personal affairs or making important decisions.”
On May 1, 2002, the day after the hearing before the probate court, Hayes drove Reynolds to another attorney, Larry Cooper, in order for Reynolds to make a new will. Before that meeting, Cooper had never met Reynolds. Reynolds informed Cooper that he was upset with the children and that he wanted to leave the children out of his will. Reynolds told Cooper about his past heart troubles, but neither Reynolds nor Hayes informed Cooper of Reynolds’s Alzheimer-type dementia. Reynolds and Hayes also told Cooper that Reynolds had been deemed competent in the guardianship and conservatorship matters that were still pending in the probate court.
That night, Cooper drafted the new will for Reynolds. In accordance with Reynolds’s instructions, the new will devised essentially all of Reynolds’s estate to Hayes; the will specified that the children *997 were to receive five dollars each. Hayes’s two daughters were named as alternative beneficiaries in the event that Hayes predeceased Reynolds. Hayes and Reynolds returned to Cooper’s office the next day, on May 2, 2002, and reviewed the draft of the will Cooper had prepared the night before. Reynolds and Hayes noted a few details in the draft that needed to be corrected. One such detail involved an incorrect description of the county in which some of Reynolds’s property was located. Cooper made the changes, and Reynolds executed the new will on May 2, 2002.
In his deposition, Cooper testified that Reynolds seemed aware that he was making a new will during their meeting on May 1, 2002, and that Reynolds seemed to know what he was doing as he executed the will on May 2, 2002. Cooper also testified that Hayes was with Reynolds during their discussions. Cooper could not remember whether Hayes and Reynolds were alone as they reviewed the draft of the will, and determined the changes that needed to be made.
Reynolds died on June 16, 2002. Two weeks after Reynolds’s death, the children attempted to probate the May 2000 will. Hayes subsequently came forward with the May 2002 will, and these proceedings followed.
A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; and Bussey v. John Deere Co., 531 So.2d 860, 862-63 (Ala.1988). “When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present ‘substantial evidence’ creating a genuine issue of material fact.” Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999) (citing Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989)). Substantial evidence, is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Horton v. Rasberry, 852 So.2d 155, 157 (Ala.Civ.App.2002) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). When reviewing a summary judgment, appellate courts consider the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Carter v. Innisfree Hotel, Inc., 661 So.2d 1174, 1177 (Ala.1995).
A testator must have testamentary capacity to execute a valid will. Specifically, a testator must have
“ ‘mind and memory sufficient to recall and remember the property [he] was about to bequeath, and the objects of [his] bounty, and the disposition which [he] wished to make — to know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other....’”
Fletcher v. DeLoach, 360 So.2d 316, 318 (Ala.1978) (quoting Knox v. Knox, 95 Ala. 495, 503,11 So. 125, 128 (1892)). However, it is presumed that every person who has obtained the age of majority has the capacity to make a valid will, and the person challenging a will has the burden of proving that the testator lacked testamentary capacity. Horton, supra, citing Fletcher, supra, and Knox, supra. A lack of capacity may be shown by evidence indicating that the testator suffered from a permanent type of insanity before executing the will or evidence indicating that the testator lacked “capacity at the time [he] executed the will.” Fletcher, 360 So.2d at 318.
*998 Whether a testator lacked testamentary capacity is generally a question of fact. See, e.g., Allen v. Sconyers, 669 So.2d 113, 118 (Ala.1995). Our supreme court has upheld a summary judgment in favor of a will’s proponent upon a showing that the testator merely displayed common signs of aging such as occasional forgetfulness. H.B. Cleveland v. Central Bank of the South, 574 So.2d 741, 743 (Ala.1991). In reversing a summary judgment invalidating a will, this court has noted that a testator may be found to be mentally competent to execute a will, despite evidence indicating that the testator was previously diagnosed as having dementia. Speegle v. Oswald, 774 So.2d 595, 596 (Ala.Civ.App.2000) (citing Sanders v. Brooks, 611 So.2d 336, 338 (Ala.1992)). However, our supreme court has reversed a summary judgment upholding the validity of a will because, as the court noted, the testatrix suffered from Alzheimer-type dementia and, eight days after she executed the challenged will, she had been seen by her doctor who determined that her mental condition had deteriorated. Allen, supra.
There is conflicting evidence regarding Reynolds’s mental state immediately before and at the time of the execution of the 2002 will. In support of their motion for a summary judgment, the children presented evidence that Reynolds suffered from Alzheimer-type dementia before executing the 2002 will. See Horton, supra. The children presented the detailed deposition testimony of Dr. Jackson, who described his diagnosis of Reynolds as “not a close case.” Further, just two days before Reynolds executed the 2002 will, the probate court held a hearing that led to its judgment declaring Reynolds incompetent and appointing a guardian and conservator.[2] Further, neither Reynolds nor Hayes told Cooper about Reynolds’s Alzheimer-type dementia diagnoses. Cooper was also not fully informed about the proceedings in the probate court. Dr. Jackson’s testimony, as well as the testimony of Reynolds’s daughters, is in stark contrast to the testimony presented by Hayes.
In opposition to the children’s motion for a summary judgment, Hayes presented the deposition testimony of the probate judge and Cooper. The probate judge testified that only two days before Reynolds executed the will Reynolds seemed to understand the questions asked of him and answered those questions appropriately. The probate court, nonetheless, declared Reynolds to be incompetent based upon the evidence presented. Cooper testified that Reynolds appeared to understand what property he owned and that he was making a new will. Aso, despite his not being fully informed of Reynolds’s mental-health issues, Cooper testified that Reynolds said that he was upset with the children and that he understood that he was essentially writing them out of the will.
Viewing all of the evidence in the light most favorable to Hayes and resolving all reasonable doubts regarding the existence of a genuine issue of material fact in favor of Hayes, the nonmovant, as we must, we *999 conclude that Hayes presented substantial evidence sufficient to defeat the children’s motion for a summary judgment. Given the conflicting evidence, we must conclude that the question of Reynolds’s testamentary capacity is a question of fact that is not appropriate for resolution by a summary judgment. See McClung v. McClung, 709 So.2d 30, 32 (Ala.Civ.App.1997).
Accordingly, we reverse the trial court’s summary judgment in favor of the children and remand the cause for further proceedings.
REVERSED AND REMANDED.
CRAWLEY, P.J., and PITTMAN, MURDOCK, and BRYAN, JJ., concur.

. We note that our supreme court recently considered the trial court's entry of a summary judgment in favor of Reynolds’s children in an unrelated matter involving Reynolds's capacity to contract. Ex parte Chris Langley Timber & Mgmt., Inc., 923 So.2d 1100 (Ala.2005). In that case, Reynolds entered into a contract for the sale of timber approximately three months before the date on which he executed the will at issue in this case. Our supreme court determined that there was a genuine issue of material fact regarding whether Reynolds had the capacity to enter into a contract and remanded the case. Id.

. A testator being assigned a guardian and/or conservator does not, by itself, preclude the testator from executing a valid will. Houston v. Grigsby, 217 Ala. 506, 116 So. 686 (1928) (holding that proof of the adjudication of insanity and that the testatrix was under guardianship of the probate court when she executed the contested will was sufficient to cast upon the will’s proponent the burden of establishing testamentary capacity at the time she executed the will). See also Toler v. Murray, 886 So.2d 76 (Ala.2004) (stating that a ward of the probate court retains testamentary authority and, therefore, may, upon a proper showing by the will’s proponent, be deemed to have had testamentary capacity at the time of the will's execution).